ASSASSINATION ARCHIVES AND
RESEARCH CENTER,
Plaintiff,

v.

CENTRAL INTELLIGENCE
AGENCY, Defendant.

No. 99–525 EGS 37–1 57–1.

United States District Court,
District of Columbia.

Oct. 24, 2001.

Amended Order Filed Oct. 25, 2001.

Gordon Michael Harvey, Esquire, United States Attorney's Office, Washington, DC.

James H. Lesar, Esquire, Washington, DC.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

In February 1993, Plaintiff, the Assassination Archives and Research Center ("AARC"), filed a Freedom of Information Act ("FOIA") request with Defendant, the Central Intelligence Agency. Plaintiff seeks the release of a five-volume set on "Cuban Personalities," which was compiled in November 1962 by the Office of Biographic Registry in the CIA's Office of Central Reference ("Compendium"). *See* Am. Cmpl. at ¶ 4. The document is a compendium of "personality profiles on specific individuals, and biographic data on other individuals." Declaration of Herbert Brick ("Brick Decl."), ¶ 19.

AARC sought a fee waiver for the copying costs associated with the search for the document. *Id.* The CIA acknowledged the receipt of AARC's FOIA request, but refused to waive the copying fees. Compl. at 4–5. AARC's appeal of the waiver decision was denied by the CIA in August 1993. AARC filed the instant lawsuit on February 26, 1999. On February 8, 2000, this Court directed the CIA to waive copying fees associated with AARC's request.

Following the resolution of the fee waiver dispute, the CIA began processing AARC's request for the Compendium. On March 21, 2000, the CIA informed AARC by letter that the document sought was exempt from disclosure under exemptions (b)(1) and (b)(3) of FOIA. On March 28, 2000, AARC appealed the CIA's determination through the CIA's internal appeal system. The CIA has acknowledged that appeal, but has not issued a determination.[1]

Pending before the Court are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. In its motion for summary judgment and reply brief, the CIA relies on two declarations by Herbert Brick, its Information Review Officer for the Directorate of Intelligence. *See* Def.'s Mot. for Sum. Judg., Exhibit 1; Def.'s Opp'n to Pl.'s Cross–Motion for Sum. Judg. & Reply in Support of Def.'s Mot. for Sum. Judg. ("Def.'s Opp'n"), Exhibit A. In support of its motion for summary judgment and in opposition to defendant's, AARC submits two declarations by Professor John M. Newman. *See* Pl.'s Mot. for Sum. Judg., Decl. of John M. Newman; Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross–Motion for Sum. Judg. ("Pl.'s Reply"), Second Decl. of John M. Newman. AARC has also produced exhibits, including lists of catalogued information publicly available on Cuban personalities and sample biographies of Cuban individuals, released pursuant to the JFK Act. *See* Pl.'s Reply, Attachs. 1–5. The Court has considered the parties' motions, oppositions and replies, and the applicable statutory and case law. For the following reasons, the Court **GRANTS** defendant's motion for summary judgment, and **DENIES** plaintiff's motion for summary judgment.

### Discussion

#### I. *Standard of Review*

Summary judgment should be granted pursuant to Fed.R.Civ.P. 56 only if no

---

1. The CIA asserts that, "[i]n light of the ongoing litigation, plaintiff's appeal of the denial of plaintiff's FOIA request is moot." Briick Decl. at ¶ 7(L).

genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975).

In a suit brought to compel production pursuant to FOIA, where there are cross-motions for summary judgment, an agency is entitled to summary judgment "if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced ... or is wholly exempt from the Act's inspection requirements.'" *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C.Cir.2001) (quoting *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978)); *see Billington v. United States Dep't of Justice,* 233 F.3d 581, 583–84 (D.C.Cir.2000); *Summers v. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C.Cir. 1998). On the other hand, summary judgment is appropriate for a FOIA plaintiff when the requested material, "even on the agency's version of the facts, falls outside the proffered exemption." *Petroleum Inf. Corp. v. United States Dep't of Interior,* 976 F.2d 1429, 1433 (D.C.Cir.1992). The cross-motions for summary judgment pending before the Court present no genu-

inely disputed material facts that would preclude summary judgment.

## II. Factual Background

The parties do not dispute the nature of the document sought by AARC, nor the fact that it has not previously been disclosed. The Compendium was compiled in 1962 by the Office of Biographic Registry at CIA and represents a five-volume "compilation of personality profiles of, or biographic data on, a number of Cuban individuals." Briick Decl. at ¶¶ 14, 19. The Compendium includes non-classified biographies, which are as a general rule based on open source information, and profiles that are marked SECRET because they rely on information collected clandestinely. *Id.* at ¶ 19. According to the Briick Declaration, "[t]his compendium, in its entirety, is classified SECRET because its disclosure would reveal those individuals in whom CIA had an intelligence interest and would provide leads to identifying the intelligence sources who or which acquired the information." *Id.* The CIA has concluded that release of the Compendium is likely to damage national security because such disclosure can be reasonably expected to result in the identification of CIA intelligence interests and loss of intelligence sources. *Id.*

AARC does not dispute the Briick Declaration's assertion that "the CIA has never released this document, nor has it ever released any portion of the document in any form at any time, whether as part of the President John F. Kennedy Assassination Records Collection Act of 1992 or otherwise." *See* Pl.'s Reply at 2; Supp. Briick Decl. at ¶ 7. Rather, AARC argues that the CIA has "previously released the same information in disclosing records pursuant to the [JFK Act]." Pl.'s Reply at 2; *see also* Second Newman Decl. at ¶ 2 (describing how the CIA has released de-

tailed information on hundreds of Cuban personalities).

Briick's supplemental declaration asserts that pursuant to a written delegation of authority in accordance with Executive Order 12,958, he is authorized to classify and declassify information at the "Top Secret" level. *See* Supp. Briick Decl. at ¶ 2. He is also authorized to review classified CIA information and to make a determination as to whether such information is exempt from "automatic declassification" provisions of section 3.4 of the executive order. *Id.* While AARC, in its Motion and Opposition, argued that only the Secretary is authorized to declassify information, AARC did not, in its reply brief, contradict Mr. Briick's representations as to his authority. Further, the Court takes notice of Sections 1.4 and 3.1(c) of Executive Order 12,959, which permit agency heads to delegate classification and declassification authority. Exec. Order 12,958, §§ 1.4, 3.1(c).[2]

### III. Freedom of Information Act

Plaintiffs seek release of the Cuban Volumes pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. FOIA requires federal agencies to comply with requests to make records available to the public, unless the requested records fall within one or more of nine categories of exempt material. *Id.* § 552(a), (b). If a document contains exempt information, the agency is obligated to release "any reasonably segregable portion" after deletion of the nondisclosable portions. *Id.* § 552(b).

██ This Court reviews *de novo* the agency's determination that it has fulfilled its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B); *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir. 1994); *Hayden v. Nat'l Security Agency*, 608 F.2d 1381, 1384 (D.C.Cir.1979). The burden is on the agency to demonstrate that it has acted properly in withholding information. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51, 109 S.Ct. 2841, 106 L.Ed.2d 112; *Hayden*, 608 F.2d at 1384. Exemptions must be narrowly interpreted to give effect to the strong Congressional intent of favoring disclosure. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989); H.R.Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966), U.S.Code Cong. & Admin. News 1966, pp. 2418, 2423 (noting the need "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy"). However, in a case concerning questions of national security, such as this one, the D.C. Circuit has instructed district courts to give "substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Salisbury v. United States*, 690 F.2d 966, 970 (D.C.Cir. 1982); *see Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C.Cir.1982) (requiring "utmost deference" to affidavits by military intelligence officers).

---

2. Plaintiff's argument that the agency head must notify the President every time a document is exempted from automatic declassification is without merit. *See* Pl.'s Opp'n at 15–16. Defendant correctly notes that the relevant section of the executive order, Section 3.4(c), requires notification for exemption of "any specific file series of records," and is thus applicable to agency decisions to exempt a large number of documents on a particular issue or of a specific nature. *See Schrecker v. Dep't of Justice*, 74 F.Supp.2d 26, 29 (D.D.C.1999), *aff'd in part and rev'd in part*, 254 F.3d 162 (D.C.Cir.2001) (describing memorandum to President from Attorney General Janet Reno seeking exemption for FBI administrative and investigatory records).

■■ The D.C. Circuit has held that FOIA requires that an agency claiming that material is exempt from exposure provide the requestor with a description of each document withheld and an explanation of the agency's reasons for nondisclosure. *See Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, (D.C.Cir.1996); *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973). The agency must provide affidavits that "disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. United States Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir.1987). Summary judgment for the federal agency is proper "[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Hayden*, 608 F.2d at 1387.

AARC argues that the CIA's *Vaughn* declaration is insufficient. *See* Pls.' Opp'n at 11–14. The CIA counters that a 24–page declaration of reasons for withholding a "single document" is more than sufficient. The CIA's contention that what is at issue is a "single document" may stretch the plain meaning of that word, as the requested material is a five-volume compendium of documents. However, to require the CIA to produce a list of the compendium's contents would defeat the purpose of the FOIA exemptions. *See Hayden*, 608 F.2d at 1384 ("When the itemization and justification are themselves sensitive, however, to place them on public record could damage security in precisely the way that FOIA Exemption 1 is intended to prevent."). For reasons set forth in its *Vaughn* declaration, the CIA has determined that it cannot produce a list of names of the people whose biographies are contained in the Compendium without revealing the information it seeks to protect. *See* Briick Dec. at ¶¶ 12, 19–

37. Similarly, revealing the number of biographies in the compendium would reveal the extent of the agency's intelligence. *Id.*

■ The agency may file affidavits to meet its burden of demonstrating that documents were properly withheld from disclosure. *Hayden*, 608 F.2d at 1387. The Court is satisfied that the two Briick declarations provide an adequate basis for determining whether the CIA has properly withheld the Compendium pursuant to FOIA Exemptions (b)(1) and (b)(3), and has not reviewed any material in camera. *See King*, 830 F.2d at 223–24 (*Vaughn* index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information").

■ AARC argues that material analogous to that contained in the Compendium has been previously released by the CIA and that the agency has thus waived any right to withhold the Compendium. The initial burden is on the CIA to demonstrate that the Compendium falls within the claimed exemptions. 429 U.S. at 150–51, 97 S.Ct. 401. The burden then shifts to AARC to show that the agency has previously formally released as specific, matching information, thus waiving the right to withhold the requested material. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C.Cir.1990). The Court, therefore, first reviews the CIA's claim that the Compendium is exempt from disclosure under FOIA Exemptions (b)(1) and (b)(3). If the Compendium is properly exempted, the Court must determine whether AARC has met its burden of production on the question of waiver.

*IV. FOIA Exemption (b)(1)*

■ Exemption (b)(1) of FOIA exempts from mandatory disclosure records that are:

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and

(B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1). Thus, the CIA has the burden of demonstrating (1) that it has followed proper classification procedures and (2) that the document "logically falls within the claimed exemption." *Hayden*, 608 F.2d at 1387.

 The CIA relies on Executive Order No. 12958, reprinted in 60 Fed.Reg. 19825 (1995), in withholding the Compendium pursuant to FOIA exemption (b)(1). *See* Def.'s Mot. for Sum. Judg. at 3. According to the Briick declaration, the Compendium is properly classified under Section 3.2. Mr. Briick has determined that the Compendium "falls within at least one of the seven categories for classified information listed in Section 1.5 of EO 12958, namely 'intelligence activities ... intelligence sources or methods, or cryptology.'" Briick Decl. at ¶ 7 (citing Exec. Order 12,958 § 1.5(c)). Furthermore, according to the CIA, the Compendium is exempt from the order's automatic declassification provision because it concerns the application of an intelligence source or method.[3] *Id.* (citing Exec. Order 12,958 § 3.4(b)(1)).

Courts have recognized that FOIA creates a tension between the need for "disclosure of information by government agencies and the need for secrecy in some operations vital to the national defense."

*Hayden*, 608 F.2d 1381, 1383 (D.C.Cir. 1979). District courts, however, are instructed to defer to federal agencies in questions of national security and intelligence. The D.C. Circuit has held that "the assessment of harm to intelligence sources and methods is 'entrusted to the Director of Central Intelligence, not to the courts.'" *Students Against Genocide*, 257 F.3d at 835.

The Court will not go behind the statements made in the Briick declaration regarding the contents of the Compendium and the consequences of its release without record evidence that contradicts those statements or suggests agency bad faith. *Hayden*, 608 F.2d at 1387. Mr. Briick avers that release of the Compendium would endanger current intelligence efforts in Cuba because it would reveal the intelligence that the U.S. keeps on individuals, the type of information that the U.S. considers important, the extent of the U.S. intelligence and its priorities, and, potentially, confidential sources. *See* Briick Decl. at ¶¶ 15, 19. The profiles were prepared for internal CIA use and, while compiled in 1962, contains information that the CIA considers to be "classified and sensitive." *Id.* at ¶ 15.

AARC states that the CIA's concern that national security would be endangered by disclosure of the agency's intelligence methods is unfounded because the CIA has publicly admitted that it employs various types of intelligence gathering techniques. *See* Newman Decl. at ¶ 8

---

**3.** Executive Order 12,958 provides that information of historical value that is more than 25 years old shall be automatically declassified unless specifically exempted under Section 3.4(b). Exec. Order 12,958 § 3.4(b). Section 3.4(b) contains nine categories of information exempt from automatic disclosure; the CIA's expert, Mr. Briick, concludes that the Compendium falls within the first exception, which covers information, "the release

of which should be expected to: (1) reveal the identity of a confidential human source, or reveal information about the applicability of an intelligence source or method, or reveal the identity of a human intelligence source when the unauthorized disclosure of that source would clearly and demonstrably damage the national security interest of the United States." Exec. Order 12,958 § 3.4(b)(1); *see* Briick Decl. at ¶ 7.

(CIA has released records showing that it uses mail and phone intercepts to gather information on Cuban nationals). In *Hayden*, the appellants argued that the National Security Agency's rationale for nondisclosure of information gained through certain channels was implausible and unreasonable because it was "well known" that the agency monitored channels in question. 608 F.2d at 1388. The D.C. Circuit held that the agency's explanation that disclosure would reveal which channels it monitored was "by no means illogical or implausible," and, rather, represented an instance in which Congress intended courts to defer to the agency's judgment and expertise. *Id.* Similarly, the CIA's previous decision to release information concerning intelligence methods does not obligate it to disclose all forms of intelligence gathering in Cuba.

AARC also suggests that the CIA has acted in bad faith by claiming that disclosure of the Compendium would endanger national security because much of the information has been previously released and because the CIA was resistant to releasing information pursuant to the JFK Act. While this argument is considered at greater length below, a mere assertion of bad faith is not sufficient to overcome a motion for summary judgment. "The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases." *Hayden*, 608 F.2d at 1387.

Even if material substantively meets the criteria for withholding pursuant to Exemption (b)(1), it must also meet the statute's procedural requirements. *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 485 (D.C.Cir.1980). AARC contends that, procedurally, the Compendium has not been properly classified.

Procedural requirements of Executive Order 10,501 [4] control the question of whether the Cuban Volumes were properly classified in the first instance. *See King v. United States Dep't of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987) (courts are to evaluate classification decisions pursuant to the Executive Order "in force at the time the challenged decisions were made"). Section 5 of Executive Order 10501 provides that:

> [t]he assigned defense classification on bound documents, such as books or pamphlets, the pages of which are permanently and securely fastened together, shall be conspicuously marked or stamped on the outside of the front cover, on the titled page, on the first page, on the back page and on the outside of the back cover. In each case the marking shall be applied to the top and bottom of the page or cover.

Executive Order 10501, § 5. The Briick declaration states that each of the five volumes of the Compendium is marked "Secret—No Foreign Dissem." on "[t]he top and bottom of the title page and back page" and that "[t]here is no front or back cover and no clearly defined front page for the document." Supp. Briick Decl. at ¶ 5. Every page in the document, other than the page following the title page,[5] is

---

**4.** If a document classified under a previous order is reevaluated when a new order is in effect, the new order controls the issue of whether the material is substantively subject to classification. *See Military Audit Project v. Casey*, 656 F.2d 724, 737 n. 41 (D.C.Cir.1981). *See* Briick Decl. (stating that classified nature of compendium was reevaluated under Exec.

Order 12,958 after AARC's request was made). However, in evaluating whether the procedural classification requirements were met, the order under which the information was classified, controls.

**5.** This page bears a warning that the document "contains information affecting the Na-

marked with a classification ranging from "Unclassified" to "Secret–No Foreign Dissem." *Id.* The CIA has adequately demonstrated that the classification of the Compendium complies with the procedures outlined in Section 5 of Executive Order 10501.

Section 3 of Executive Order 10501 provides that "[t]he classification of a file or group of physically connected document shall be at least as high as that of the most highly classified document therein." Executive Order 10501, § 3. The section further provides that a document shall "bear only one over-all classification." *Id.* Although the Briick Declaration notes that certain individual biographies do not bear a "SECRET" classification stamp, it also asserts that other biographies are marked "SECRET" and that the entire document is properly classified as "SECRET." Briick Decl. at ¶ 19.

The Court concludes that the CIA's procedure in classifying the Compendium was proper and that, substantively, the document is properly withheld from disclosure as material revealing intelligence activities, sources and methods.

## V. FOIA Exemption (b)(3)

Exemption (b)(3) provides that FOIA's disclosure requirements do not apply to records that are:

> [s]pecifically exempted from disclosure by statute provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . .

5 U.S.C. § 552(b)(3).

The CIA asserts that its reliance on Exemption (b)(3) stems from section

103(c)(6) of the National Security Act of 1947, which requires the Director of Central Intelligence to protect "intelligence sources and methods" from unauthorized disclosure. 50 U.S.C. § 403–3(c)(6). Section 103(c)(6) qualifies as a statute triggering Exemption (b)(3). *See CIA v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985); *Students Against Genocide,* 257 F.3d at 833; *Fitzgibbon,* 911 F.2d at 761. Exemption (b)(3) implicates the same concern for protecting "intelligence sources and methods" as is at issue in the discussion of Exemption (b)(1). Thus, the Court finds that the Briick Declaration is a sufficient basis to demonstrate that, substantively, the Compendium falls within Section 103(c)(6) and is therefore properly withheld.

▪ AARC's sole argument against the application of Exemption (b)(3) is that the CIA has not adequately explained why the Compendium is not segregable. *See* Pl.'s Opp'n at 17. The Briick Declaration, however, clearly outlines the CIA's position that, were the document to be redacted to exclude protected information, the resulting information would be effectively meaningless. The information that the CIA seeks to protect from disclosure is not easily removed from the Compendium. Rather, the CIA is concerned that the names of the people profiled, the type of information provided about individuals, and the level of detail contained in the biographies will reveal methods of the agency's intelligence gathering. The necessary redaction would require the agency to commit significant time and resources to a task that would yield a product with little, if any, informational value. The Court will not ask the CIA to engage in such an undertaking.

tional Defense of the United States." Supp. Briick Decl. at ¶ 5.

10

*VI. Waiver*

 Plaintiff's primary response to the CIA's claim to Exemptions (b)(1) and (b)(3) is that disclosure of the Compendium could not possibly result in any damage to national security because the information at issue has already been officially released by the CIA pursuant to the JFK Act. *See* Pl.'s Mot., at 7–8. To succeed on such an argument, AARC must "point . . . to specific information in the public domain that appears to duplicate that being withheld." *Afshar*, 702 F.2d at 1130. *Fitzgibbon v. CIA* sets out a three-part test, for which the burden of production lies with FOIA plaintiffs. 911 F.2d 755, 765 (D.C.Cir.1990). First, plaintiff must demonstrate that the "information requested [is] as specific as the information previously released." *Id.* at 767; *see also Afshar*, 702 F.2d at 1130. "Second, the information requested must match the information previously disclosed," and must have been formally released. *Fitzgibbon*, 911 F.2d at 767.

 Any information released by the CIA pursuant to the JFK Act likely constitutes an official and documented disclosure. However, the Court does not reach the third prong of the *Fitzgibbon* test, because AARC fails to meet its burden on the first two prongs. Plaintiff asserts that "the information at issue here is as specific as that which previously has been released" because the Compendium and the materials released pursuant to the JFK Act both "contain[ ] biographic information on Cuban personalities." *See* Pl.'s Reply at 8. AARC also makes the conclusory statement that "[i]nformation on those personalities in the five-volume set matches

information on the same personalities that has been released under the JFK Act." *See id.* These statements are unsupported by the plaintiff's declarant, Professor Newman. Professor Newman has not seen the Compendium, nor any portion of them. Thus, there is no way for him to know whether the information in the compendium is either "as specific" or if it "matches" that information previously released. The fact that the two sets of information at issue both contain biographical information about Cubans is insufficient to meet plaintiff's burden of production.

The CIA contends that it has not released the Compendium, nor any portion thereof.[6] AARC does not dispute this, and does not allege that the Cuban biographies that have been previously released are identical to those contained in the Compendium: **"AARC did not mean to imply, nor did it, that the CIA had officially released the document at issue or any portion of it."** Pl.'s Reply, Local Rule 7.1(h) Statement at ¶ 2. AARC could not make such a claim, as neither it nor its declarant have viewed the document at issue. The present situation is thus akin to a guessing game. However, a plaintiff "[c]annot use a CIA admission 'to obtain more specific information, an approach that violates the *Fitzgibbon* test and that has been rejected by this Circuit.' " *See National Security Archive v. CIA*, Memo. Opin., Civil Action No. 99–1160, at 17 (July 31, 2000), citing *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C.Cir.1993) (holding that congressional testimony of a general nature about documents did not waive Exemption (b)(1) privilege to withhold the documents).

---

**6.** "Defendant disputes the statements in Paragraph 1 to the extent that plaintiff means to imply by them that the CIA has officially released the document at issue, or released any portion of the document in any form at any time, whether as part of its disclosures under the JFK Act or otherwise." Def.'s Opp'n, Def.'s Response to Pl.'s Local Rule 7.1(h) Stmt. at ¶ 1.

AARC attached to its Reply Memorandum a copy of Judge Kotelly's opinion in *National Security Archive v. CIA*, Memo. Opin., Civil Action No. 99–1160 (July 31, 2000). Although AARC does not refer to the opinion in its brief, presumably AARC is hopeful that the Court will see fit to apply Judge Kotelly's finding that the FOIA plaintiffs in *National Security Archive* had met the requirements of the *Fitzgibbon* test to the instant matter. However, in *National Security Archive*, the plaintiff requested an admission or denial from the CIA that the agency keeps biographies of several former leaders of Eastern European countries. *Id.* at 2. Plaintiffs produced an article, published by an agency official, in which the author stated that the CIA keeps biographies on *all* world leaders. Clearly, the article's statement was "as specific" and "matched" the requested admission that the CIA had biographies on particular world leaders. The instant case might be analogous to *National Security Archive* if AARC had alleged that the CIA had previously released biographies of *all* Cuban personalities in whom the agency had an interest.[7] Furthermore, the fact that the CIA has previously released similar information does not prohibit it from withholding information that it deems to be classified. *See Assassination Archives and Research Center v. United States Dep't of Justice*, 828 F.Supp. 100, 101 (D.D.C.1993) (finding devoid of merit AARC's argument that because the FBI had previously released information, it could not subsequently withhold similar information).

In *Students Against Genocide v. Department of State*, the plaintiffs sought disclosure of classified photographs. 257 F.3d 828, 837 (D.C.Cir.2001). The D.C. Circuit rejected the notion that, because some of the photographs at issue had been released, the others were not properly withheld pursuant to Exceptions (b)(1) and (b)(3). *Id.* Although Ambassador Albright had displayed photographs to U.N. delegates, she did not distribute them, and the court held that the photographs were properly withheld from disclosure. *Id.* The court credited the government's reasoning that public and permanent release of documents would allow experts to make detailed examinations in a way that was not possible through the ambassador's display of the photographs. *Id.* Such an assessment was "plausible" and, absent "contrary evidence or evidence of agency bad faith," the court deferred to the agency's determination. *Id.* The court noted that "[i]t is precisely on a point like this 'that a court, lacking expertise in the substantive matters at hand, must give substantial weight to agency statements, so long as they are plausible and not called into question by contrary evidence or evidence of agency bad faith.'" *Id.*, citing *Halperin v. CIA*, 629 F.2d 144, 149 (D.C.Cir.1980). There is no contrary evidence nor evidence of bad faith on the part of the CIA, which would prohibit a finding that the CIA has not previously released the Compendium or portions thereof. As discussed above, AARC's bald assertion that the agency is acting in bad faith and its statement that the CIA has previously acted improperly in withholding information is insufficient to overcome the deferential standard afforded to agency affidavits. *See Hayden*, 608 F.2d at 1387.

## Conclusion

For the foregoing reasons, the Court finds that the Compendium requested by plaintiff was properly withheld from disclosure by the CIA pursuant to FOIA Exemptions (b)(1) and (b)(3). Further, the

---

**7.** Even then, however, plaintiff would not have shown that the information in the biographies released was "as specific" as that sought.

Court finds that it is undisputed that the CIA has not previously released the Compendium, or any material therein; therefore, plaintiff cannot meet its burden of demonstrating that the agency has waived its ability to withhold from disclosure the requested material.

An appropriate order accompanies this opinion.

## *AMENDED ORDER AND JUDGMENT*

The parties are hereby notified that due to a typographical error, the Order and Judgment in this matter filed on October 24, 2001, mistakenly directed the clerk to enter final judgment in favor of Plaintiff and against Defendant. The Court hereby

**VACATES** the October 24, 2001 Order and Judgment.

Pursuant to Federal Rule of Civil Procedure 58 and for the reasons stated by the Court in its Memorandum Opinion docketed October 24, 2001, it is hereby

**ORDERED** that Defendant's motion for summary judgment is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED**; and it is

**FURTHER ORDERED** and **ADJUDGED** that the Clerk shall enter final judgment in favor of Defendant and against Plaintiff.