# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 14, 2006　　　Decided December 22, 2006

No. 05-5185

BAKER & HOSTETLER LLP,
APPELLANT

v.

UNITED STATES DEPARTMENT OF COMMERCE,
APPELLEE

———

Consolidated with
05-5350

———

Appeals from the United States District Court
for the District of Columbia
(No. 02cv02522)

———

*Mark A. Cymrot* argued the cause for appellant. With him on the briefs were *Elliot J. Feldman* and *Michael S. Snarr*.

*Claire M. Whitaker*, Assistant U.S. Attorney, U.S. Attorney's Office, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, GARLAND and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH in which *Circuit Judge* GARLAND joins and *Circuit Judge* HENDERSON joins as to Parts I-IV.

Opinion dissenting in part filed by *Circuit Judge* HENDERSON.

KAVANAUGH, *Circuit Judge*: This Freedom of Information Act appeal is a footnote to the long trade dispute in which the United States and American softwood lumber companies have raised complaints about alleged unfair trade practices by the Canadian Government and Canadian softwood lumber exporters. The United States and Canada recently settled the trade disagreement, but this FOIA case lives on.

In 2002, the Department of Commerce imposed duties on imports of Canadian softwood lumber to the United States (duties that have since been rescinded as a result of the recent bilateral settlement). Later in 2002, the law firm Baker Hostetler, which represents Canadian softwood lumber companies, filed requests and a lawsuit under the Freedom of Information Act to obtain documents from the Department of Commerce related to the Department's investigation of Canadian softwood lumber imports. At issue in this appeal are 17 third-party letters that the Department had received from American lumber companies; the Department claimed FOIA Exemption 4, which covers confidential commercial information provided by outside parties to the Government. Also at issue are 51 sets of internal Department notes; the Department claimed FOIA Exemption 5, which applies to privileged government documents. The District Court concluded that the Department properly withheld the documents under those FOIA exemptions.

Applying settled legal principles to the unusual facts of this case, we affirm the District Court's judgment with respect to the 17 third-party letters, we affirm with respect to one of the 51 sets of notes, and we reverse and remand for further proceedings with respect to 50 of the 51 sets of notes.

The Department has provided Baker Hostetler numerous other softwood-lumber-related documents that are not at issue on appeal. Because of its success in obtaining those documents, the firm argues it is a "complainant" that "substantially prevailed" in the overall FOIA litigation – meaning that it may receive attorney's fees from the Department under FOIA. *See* 5 U.S.C. § 552(a)(4)(E). The District Court denied Baker Hostetler's fee request, reasoning that the law firm is representing itself and thus is ineligible for fees. The plain language of the FOIA attorney's fees provision does not contain such an exception, however, and the Supreme Court has stated that an organization remains eligible for attorney's fees even when it represents itself in litigation. *See Kay v. Ehrler*, 499 U.S. 432, 436 n.7 (1991). Two other Courts of Appeals have interpreted *Kay* to allow fees for a law firm representing itself. We agree with those courts and therefore reverse and remand for further proceedings on the attorney's fees issue; on remand, the District Court will determine whether Baker Hostetler "substantially prevailed" and is entitled to fees.

I

1. In the Tariff Act of 1930, Congress authorized the Department of Commerce to investigate (i) imports to the United States that are subsidized by foreign governments and (ii) dumping by foreign importers, which occurs when foreign companies sell their products in the United States at prices lower than in other markets. Pub. L. No. 71-361, 46 Stat. 590 (codified as amended at 19 U.S.C. §§ 1202 *et seq*.); *see* 19

U.S.C. §§ 1671(a), 1671a, 1673, 1673a. To counteract such trade practices by foreign governments and companies, the Department may impose countervailing and antidumping duties on goods imported into the United States. *Id.* §§ 1671d, 1673d. If duties are imposed, the affected foreign company may challenge the duties by seeking judicial review in the Court of International Trade. *Id.* § 1516a(a).

During the course of an investigation of subsidies to or dumping by foreign importers, the Department must maintain a public record of certain meetings between Department officials and outside parties (those are known as "ex parte meetings"). *See id.* § 1677f(a)(3); Department's Br. at 10 (Act requires Department to "create for the public record memoranda that recount" certain ex parte meetings). If the meeting is an ex parte meeting covered by the statute, the Department must list: the identity of persons present at the meeting; the date, time, and place of the meeting; and a summary of the matters discussed. 19 U.S.C. § 1677f(a)(3). By regulation, the Department keeps this public record in its Central Records Unit. *See* 19 C.F.R. § 351.104(b) (2006).

In any lawsuit challenging the imposition of duties, the Court of International Trade bases its review on the full official record assembled during the investigation. *See* 19 U.S.C. § 1516a(b)(1)(B)(i), 1516a(b)(2)(A); *see also* 19 C.F.R. § 351.104(a)(1) ("For purposes of [19 U.S.C. § 1516a(b)(2)], the record is the official record of each segment of the proceeding."). That record includes "a copy of all information presented to or obtained by the Secretary, the administering authority, or the [International Trade] Commission during the course of the administrative proceeding . . . ." 19 U.S.C. § 1516a(b)(2)(A)(i). However, "[t]he confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action" challenging an antidumping or

countervailing duty determination, although "the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order." *Id.* § 1516a(b)(2)(B).

2.  In early 2002, after an investigation, the Department of Commerce announced its decision to impose duties on imports of Canadian softwood lumber.  The law firm Baker Hostetler, which represents Canadian softwood lumber companies, then submitted two Freedom of Information Act requests for a variety of Department of Commerce documents related to the investigation.

The Department turned over a large number of responsive records, but it withheld some that it deemed to fall within FOIA's exemptions.  As relevant here, the parties' disagreement concerned two specific groups of withheld records: 17 third-party letters sent to the Department by a representative of American lumber companies; and 51 sets of internal notes of meetings between Department officials and outsiders.

As to the 17 third-party letters, the Department invoked FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  Baker Hostetler argued that Exemption 4 did not apply because the letters were not "commercial" within the meaning of FOIA.  It also maintained that the letters were not "confidential" within the meaning of Exemption 4 because the Tariff Act requires the Department to include letters submitted in connection with the investigation in the official record assembled for judicial review. *See* 19 U.S.C. § 1516a(b)(2)(A).  The District Court determined that the letters were properly withheld.  The court concluded that the letters contain confidential commercial information within the meaning of Exemption 4  and were submitted in connection

with bilateral trade negotiations – not in connection with the Department's investigation of the Canadian companies – and thus were not subject to the Tariff Act's official record provision.

As to the 51 sets of meeting notes, the Department contended that they were protected by FOIA Exemption 5, which covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). That exemption incorporates the deliberative process component of executive privilege and protects agency documents that are pre-decisional and deliberative. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Baker Hostetler argued, however, that the Tariff Act's public record requirement mandates disclosure of certain information from the Department's "ex parte meetings" with outsiders and that the meetings described in the 51 sets of notes were covered by that statutory requirement. *See* 19 U.S.C. § 1677f(a)(3). The Department responded that the meetings reflected in 50 of the 51 sets of notes were not covered by the statutory definition. In relevant part, the District Court agreed with the Department's position that the meetings in question were not "ex parte meetings" as defined by the statute; the court concluded that the notes therefore need not be disclosed.

The Department advanced a different rationale for withholding one set of notes taken by a senior Department official, Bernard Carreau, during a telephone call with a U.S. trade association. The Department argued that the Tariff Act's public record requirement did not apply to those notes because the telephone call concerned the overall trade settlement between the United States and Canada rather than the antidumping/countervailing duty investigation. Based on its in camera inspection of the notes, the District Court agreed and

therefore concluded that the notes of the Carreau telephone call were properly withheld.

The District Court also decided two other issues relevant to this appeal. First, Baker Hostetler challenged the adequacy of the Department's search for responsive documents. The District Court concluded that the Department acted in good faith and conducted a reasonable search in response to Baker Hostetler's FOIA requests. Second, Baker Hostetler claimed that it was entitled to recover attorney's fees for its success in obtaining other documents in this litigation. *See* 5 U.S.C. § 552(a)(4)(E). Without reaching the statutory question whether Baker Hostetler had "substantially prevailed" in the litigation, the District Court concluded that the law firm was not eligible for fees because it had represented itself.

On appeal, Baker Hostetler challenges the District Court's conclusions as to: the adequacy of the search; the withholding of the 17 third-party letters and 51 sets of meeting notes; and attorney's fees.

II

At the outset, we consider the District Court's jurisdiction. Baker Hostetler filed suit under the Freedom of Information Act and asked the court to order disclosure of certain Department of Commerce records. The Act provides that the United States District Court for the District of Columbia has jurisdiction over FOIA suits. 5 U.S.C. § 552(a)(4)(B). Therefore, the District Court had jurisdiction to decide this case, and we have jurisdiction over the appeal under 28 U.S.C. § 1291.

We recognize that the Tariff Act grants the Court of International Trade "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its

officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to," among other things, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2), (4). The Tariff Act's exclusive-jurisdiction provision does not apply here, however, because this is a FOIA suit for disclosure of agency records. Baker Hostetler's complaint does not challenge the Department's "administration and enforcement" of duties. And the mere fact that some of the requested records relate to the Department of Commerce's decision to impose duties does not transform this FOIA suit for disclosure of records into a Tariff Act suit seeking relief from duties.

III

Baker Hostetler first contends that the Department of Commerce did not conduct an adequate search for responsive records. A FOIA search is sufficient if the agency makes "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quotation marks omitted). An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts. *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994); *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

In this case, the District Court concluded that the Department conducted a sufficient search in response to Baker Hostetler's FOIA requests. Baker Hostetler asserts that the Department's failure to identify any responsive documents from certain high-level officials demonstrates that the Department did not perform a thorough search. But the District Court found that

the Department "filed affidavits that describe in detail the manner and method of the searches conducted." Joint Appendix ("J.A.") 224. We agree with the District Court that the Department's procedure was reasonably calculated to generate responsive documents. Baker Hostetler's assertion that an adequate search would have yielded more documents is mere speculation. *See Steinberg*, 23 F.3d at 552.

Baker Hostetler also argues that the District Court erroneously excused the Department's failure to retrieve certain deleted emails. But the Department adequately explained its inability to recover those emails, and Baker Hostetler's expert did not rebut that explanation. *See Goland*, 607 F.2d at 352-55; *see also Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) ("Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains.").

Finally, Baker Hostetler contends that the Department's alleged bad faith in responding to its FOIA requests warranted discovery concerning the deleted emails. *See Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citing *Goland*, 607 F.2d at 355). The District Court correctly determined, however, that Baker Hostetler offered no evidence of bad faith to justify additional discovery. *See Assassination Archives & Research Ctr. v. CIA*, 177 F. Supp. 2d 1, 8 (D.D.C. 2001) ("[A] mere assertion of bad faith is not sufficient to overcome a motion for summary judgment.") (citing *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (district court has "broad discretion to manage the scope of discovery" in FOIA cases).

In sum, the District Court did not err in concluding that the Department conducted an adequate search in response to Baker

Hostetler's FOIA requests.

IV

1. Under Exemption 4, FOIA's disclosure requirement "does not apply to . . . *commercial* or financial information obtained from a person and privileged or *confidential*." 5 U.S.C. § 552(b)(4) (emphases added). The District Court held that the Department need not disclose 17 third-party letters submitted to the Department by the law firm Dewey Ballantine (on behalf of American lumber companies) because they contain confidential commercial information. Baker Hostetler contends that the information in the letters is neither "commercial" nor "confidential" under Exemption 4.

We must accept the District Court's factual descriptions of the contents of the letters unless the descriptions are clearly erroneous. *See Horowitz v. Peace Corps*, 428 F.3d 271, 275, 277 (D.C. Cir. 2005). Furthermore, because "the agency alone possesses knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected." *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) (footnote omitted). We therefore rely on the Department's descriptions in its *Vaughn* index and accompanying affidavit. We review de novo the District Court's conclusion that the letters as described fall within the FOIA exemption. *See, e.g., Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 (D.C. Cir. 1998).

We first consider whether the 17 Dewey Ballantine letters contain commercial information within the meaning of Exemption 4. Contrary to Baker Hostetler's suggestion, Exemption 4 is *not* confined only to records that "reveal basic commercial operations . . . or relate to the income-producing

aspects of a business." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). The exemption reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency. *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38-39 (D.C. Cir. 2002). In *Critical Mass Energy Project v. Nuclear Regulatory Commission*, for example, we held that a non-profit organization's reports describing the operations of its members' nuclear power plants contained "commercial" information. 830 F.2d 278, 281 (D.C. Cir. 1987). We stated that the "commercial fortunes" of member utilities "could be materially affected by the disclosure of health and safety problems experienced during the operation of nuclear power facilities." *Id.* We reached a similar result in *Public Citizen Health Research Group v. FDA*. We determined that lens manufacturers had a "commercial interest" in health and safety data submitted to the FDA because the data would be "instrumental in gaining marketing approval for their products." 704 F.2d at 1290.

In this case, according to the Department's general summary of withheld documents (the *Vaughn* index), the 17 third-party letters contain "information that the submitter has voluntarily made available in confidence to the U.S. Government in connection with negotiations of a long-term agreement to resolve the trade dispute over softwood lumber and which is commercial and financial in nature." J.A. 277. The letters include "information about the domestic industry's commercial concerns," and they "reflect the commercial strengths and challenges faced by U.S. lumber companies in general, even outside the context of the negotiations." *Id.* Each letter contains at least one of the following: the association's assessment of the commercial strengths and weaknesses of the U.S. lumber industry; recommendations for settling or facilitating negotiations pertaining to the U.S. trade dispute with

Canada; an analysis of the effect such measures would have on the commercial activities and competitive position of domestic lumber companies; the U.S. lumber industry's requirements for achieving a competitive softwood lumber market; the U.S. lumber industry's views regarding the status of negotiations between the United States and Canada; or a description of the competitive challenges that domestic lumber companies face.

Under this Court's precedents construing Exemption 4, U.S. lumber companies have a "commercial interest" in such letters: The letters describe favorable market conditions for domestic companies, and their disclosure would help rivals to identify and exploit those companies' competitive weaknesses. *See Critical Mass Energy Project*, 830 F.2d at 281; *Pub. Citizen Health Research Group*, 704 F.2d at 1290. Therefore, the 17 third-party letters plainly contain commercial information within the meaning of Exemption 4.

We next consider whether the 17 letters are *confidential* under Exemption 4. When information is submitted to the Department voluntarily, "it will be treated as confidential under Exemption 4 if it is of a kind that the provider would not customarily make available to the public." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc).

It is undisputed that Dewey Ballantine voluntarily submitted the letters and ordinarily would not have made the letters available to the public. Baker Hostetler claims, however, that the letters are not confidential because the Tariff Act requires that they be included within the official record of the Department's investigation for purposes of litigation challenging the duties. *See* 19 U.S.C. § 1516a(b)(2)(A)(i) (providing that the record for judicial review shall consist of "a copy of all information presented to or obtained by the Secretary, the

administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be kept by [19 U.S.C. § 1677f(a)(3)]"). Baker Hostetler further assumes that the official record must be fully public.

Baker Hostetler's argument as to the confidentiality of the 17 letters fails for two independent reasons: *First*, the premise of Baker Hostetler's argument is wrong because the 17 third-party letters were not required to be included in the official record of this antidumping/countervailing duty investigation. After reviewing the letters, the District Court determined that they were submitted not in connection with the antidumping/countervailing duty investigation, but rather "to advance the [U.S. lumber industry's] positions on the terms of an overall settlement of an ongoing dispute between the U.S. and Canada on the importation of softwood lumber." J.A. 353.

Baker Hostetler claims that any distinction between trade negotiations and an antidumping/countervailing duty investigation is illusory. But Baker Hostetler's argument ignores the text and structure of the Tariff Act, which distinguishes trade negotiations from antidumping/ countervailing duty investigations. *Compare* 19 U.S.C. § 1516a (governing "[j]udicial review in countervailing duty and antidumping duty proceedings") *with id.* § 2155(g) (addressing when information "submitted in confidence by the private sector or non-Federal government to officers or employees of the United States in connection with trade negotiations," including confidential "commercial or financial information," can be disclosed to certain Department officials). The statutory distinction between trade negotiations and antidumping/ countervailing duty proceedings is consistent, moreover, with how trade negotiations and antidumping/countervailing duty

investigations generally occur. When the United States negotiates a trade agreement, it commonly works in concert with American industries and seeks input about how a possible agreement would affect them. The line between trade negotiations and an antidumping/countervailing duty investigation reflects the reality that American industries are likely to provide input (such as the 17 letters here) in connection with trade negotiations while an antidumping/countervailing duty investigation is also occurring. *See* Seventh Declaration of Maria Dybczak ¶¶ 15-18 (J.A. 292-93).

*Second*, Baker Hostetler's argument as to a lack of confidentiality fails for a separate reason as well. The firm relies on the Tariff Act's official record requirement (which applies in judicial proceedings challenging the imposition of duties), but that provision has an exception that protects "confidential" material from routine disclosure. *See* 19 U.S.C. § 1516a(b)(2)(B); *see also* 19 C.F.R. § 351.104; *A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1302 (Ct. Int'l Trade 1987) (analogizing § 1516a(b) to other statutes that protect confidential commercial information, including FOIA Exemption 4, and explaining that "[r]elease of such materials to an adversary, whether or not under protective order, can seriously discourage parties from disclosing confidential information in the future"). Baker Hostetler's submission here boils down to a suggestion that a statute (the Tariff Act) that protects "confidential" material somehow overrides FOIA's protection of "confidential" material. That is not a winning argument – and on that independent ground as well, we reject Baker Hostetler's argument that the Tariff Act's official record requirement trumps the confidentiality of the 17 letters.

2. We turn next to the dispute over the 50 sets of meeting notes that the District Court found to be protected under FOIA Exemption 5 (there is a 51st set of notes we will consider

separately in the next section). Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant. Those include, for example, the government attorney-client privilege, the government attorney work product protection, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege. *See Judicial Watch, Inc. v. Dep't. of Justice*, 365 F.3d 1108, 1109, 1113-14 (D.C. Cir. 2004); *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996).

This case involves the deliberative process privilege, which "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). As a general matter, notes taken by government officials often fall within the deliberative process privilege. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (the deliberative process privilege covers "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). Notes generally are selective and deliberative – and routine public disclosure of meeting notes and other notes would hinder government officials from debating issues internally, deter them from giving candid advice, and lower the overall quality of the government decisionmaking process. *See, e.g., Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) ("Disclosure of this type of deliberative material inhibits open debate and discussion, and has a chilling effect on the free exchange of ideas."); *cf. Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484, 1494 (D.C. Cir. 1984) (recognizing possibility that notes might be withheld under Exemption 5 because of "the potential chilling effect that disclosure of

handwritten notes might have on the activities of government employees").

On appeal, Baker Hostetler does not dispute that the 50 sets of notes are pre-decisional and deliberative, and ordinarily would be protected under the deliberative process privilege. Baker Hostetler instead argues that the Tariff Act requires public documentation of those ex parte meetings in the public record. The Department has not taken issue with this premise – namely, that the Department must disclose certain information contained in meeting notes to the extent the Tariff Act's public record requirement applies to these meetings. (There has been no suggestion, moreover, that the general public record requirement of Tariff Act § 1677f(a)(3) somehow could be affected or limited by § 1516a(b)(2)(B)'s protection for otherwise privileged materials in judicial proceedings challenging the imposition of duties. The Department has flatly stated that the record required by § 1677f(a)(3) is a "*public* record." Department's Br. at 10 (emphasis added).) Throughout this FOIA litigation, the Department has turned over information covered by the public record provision of the Tariff Act, regardless whether such information otherwise might have been protected under the deliberative process privilege. *See, e.g.*, J.A. 246 (District Court's unchallenged order directing the Department to disclose matters discussed and persons in attendance at meetings); Department's Br. at 14 (Department "went beyond the [District Court's] order . . . and voluntarily disclosed information from *all* meetings concerning the administrative proceedings in the AD/CVD investigation, which included certain contacts that [the Department] did not consider subject to the Tariff Act's *ex parte* memorialization requirement"); Department's Br. at 17 (Department "has provided such information as the dates, names of participants, and the topics discussed during contacts on the AD/CVD proceedings"); Eighth Declaration of Maria Dybczak ¶ 7 (J.A.

297-98) (Department "provided the information ordered [by the District Court] with respect to all meetings that could be described as pertaining to a[n] ex parte meeting as the agency interprets that requirement"); Def.'s Reply to Pl.'s Resp. to Def.'s Report to the Court on the Number of *Ex Parte* Contacts that are Being Withheld Because They are Not Subject to the Tariff Act (January 25, 2005) at 2 (Department has provided information on "*all* [ex parte] meetings and contacts identified in the notes of agency employees").

The ultimate dispute between the parties with respect to the 50 sets of meeting notes is therefore quite narrow: Are the meetings in question covered by the Tariff Act's public record requirement for ex parte meetings? The Department argues (and the District Court agreed) that the meetings are not covered because the Tariff Act's public record requirement applies only to meetings between (i) outside "interested parties" and (ii) Department "decision makers." The problem for the Department is that its interpretation is inconsistent with the plain language of the statute, which provides:

> The administering authority and the Commission shall maintain a record of any ex parte meeting between–
>
> (A) interested parties or other persons providing factual information in connection with a proceeding, and
>
> (B) the person charged with making the determination, or any person charged with making a final recommendation to that person, in connection with that proceeding,
>
> if information relating to that proceeding was presented or discussed at such meeting. The record

of such an ex parte meeting shall include the identity of the persons present at the meeting, the date, time, and place of the meeting, and a summary of the matters discussed or submitted.

19 U.S.C. § 1677f(a)(3). As this statutory language makes clear (and contrary to the Department's argument), the public record requirement for ex parte meetings is *not* limited to meetings between outside interested parties and Department "decision makers." Rather, the requirement applies to meetings between: (i) interested parties or other persons providing factual information in connection with a proceeding, and (ii) the person charged with making the determination, or any person charged with making a final recommendation to that person.

In assessing the 50 sets of meeting notes, the District Court did not apply the definition in the statutory text; it instead accepted the narrower definition advanced by the Department. We therefore must reverse and remand for further proceedings with respect to the 50 sets of meeting notes. On remand, the District Court first should determine which of the meetings reflected in the 50 sets of notes are covered ex parte meetings under the statutory definition. In that regard, we point out that although the Department's interpretation of the statute is too narrow, Baker Hostetler's interpretation of the statute is too broad. Baker Hostetler argues that the Act "requires Commerce to disclose *ex parte* meetings with *staff*," Baker Hostetler's Br. at 38 (emphasis added), regardless whether the staff member meets the statutory definition of "the person charged with making the determination, or any person charged with making a final recommendation to that person," 19 U.S.C. § 1677f(a)(3)(B). Baker Hostetler's interpretation is overinclusive. On remand, the District Court should adhere to the plain terms of the statutory language in determining which meetings are covered.

For any meeting that the District Court finds to be covered by the public record requirement, the court then should determine which parts of the notes from those meetings must be disclosed. As it has done throughout this litigation with respect to other notes, the District Court should order the Department to disclose only those portions of the notes from covered meetings that reflect the identity of persons present or the date, time, or place of the meeting. *Cf.* 5 U.S.C. § 552(b) (agency must disclose "reasonably segregable" portions of a requested record "after deletion of the portions which are exempt"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("[FOIA] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained.").

The Tariff Act's public record requirement also directs the Department to prepare a "summary of the matters discussed" during a covered meeting. 19 U.S.C. § 1677f(a)(3). Of course, the Department is not required to create such records in this FOIA suit. *See Kissinger*, 445 U.S. at 152. And it is not at all clear whether any portion of meeting notes would qualify as a "summary of the matters discussed" as contemplated by the Tariff Act. Throughout this litigation, so as to avoid any delay as a result of this question, the Department has agreed to disclose "the topics discussed" at covered meetings. *See* Department's Br. at 17 (noting that the Department "has provided such information as . . . the topics discussed during contacts on the AD/CVD proceedings"); J.A. 306-328, 312 (Department's Second Amended *Vaughn* Index, summarizing "contacts with outside persons, whether under the Tariff Act or not, and the topics discussed"). The parties have not suggested that the District Court follow a different practice on remand with respect to any additional covered meetings, and the District Court may continue to take that same approach.

3. One set of meeting notes raises a different issue. Those are the notes taken by Department of Commerce official Bernard Carreau during his telephone conversation with a trade association representing U.S. lumber companies. The public record requirement covers meetings in which a person provides a Department official "factual information *in connection with a proceeding*." 19 U.S.C. § 1677f(a)(3)(A) (emphasis added). Based on its in camera review, the District Court found that these notes did not concern the antidumping/countervailing duty proceeding. Because we have no reason to question that factual description, we conclude that the notes of the telephone call were not covered by the public record requirement. We therefore affirm the District Court's decision that the notes of the Carreau meeting were properly withheld under FOIA Exemption 5.

V

Like many other federal statutes, the Freedom of Information Act provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). After Baker Hostetler filed suit in this case, the Department produced (in full or redacted form) numerous responsive documents in accordance with the District Court's orders. As a result, Baker Hostetler contends it is a "complainant" that has "substantially prevailed" in the FOIA litigation (and therefore may receive attorney's fees). The District Court ruled, however, that Baker Hostetler is not eligible for attorney's fees because the firm represented itself in the litigation.

We conclude that Baker Hostetler is eligible for attorney's fees because of (i) the plain text of the statute and (ii) the

Supreme Court's decision in *Kay v. Ehrler*, 499 U.S. 432 (1991), particularly footnote 7 of that opinion. We note, moreover, that the two other Court of Appeals panels to consider the issue after *Kay* each unanimously concluded that a law firm representing itself is eligible for attorney's fees.

By its terms, FOIA's fees provision applies to all "complainants" who have "substantially prevailed." The statutory text contains no exception for a law firm that represents itself. In interpreting attorney's fees provisions, as in construing other statutes, courts must adhere to the plain text. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2459 (2006); *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991); *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 220 (D.C. Cir. 1980). Under the plain language of § 552(a)(4)(E), Baker Hostetler is a "complainant" and may receive attorney's fees if it substantially prevailed.

The Department correctly points out, however, that the Supreme Court and this Court have carved out a narrow exception to attorney's fee statutes when *individual* plaintiffs represent themselves. *See, e.g., Kay*, 499 U.S. at 437-38; *Burka v. Dep't of Health & Human Servs.*, 142 F.3d 1286 (D.C. Cir. 1998). In *Kay*, the Supreme Court held that an individual attorney representing himself could not recover attorney's fees under 42 U.S.C. § 1988, the attorney's fees provision for certain civil rights suits. 499 U.S. at 437-38. The Court reasoned that "the word 'attorney' assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under § 1988." *Id.* at 435-36 (footnote omitted). The attorney's fees provision was designed, moreover, to "enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Id.* at 436. Congress wanted to "ensur[e] the effective prosecution

of meritorious claims," which is more likely when litigation decisions are informed by "the judgment of an independent third party." *Id.* at 437.

In *Kay*, the Supreme Court made crystal clear, however, that the exception for *individual* plaintiffs who represent themselves does not apply to *organizations*:

> Petitioner argues that because Congress intended organizations to receive an attorney's fee even when they represented themselves, an individual attorney should also be permitted to receive an attorney's fee even when he represents himself. However, an organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono*, and thus, there is always an attorney-client relationship.

*Id.* at 436 n.7. In explaining that organizations may recover fees when represented by in-house counsel, the Supreme Court did not distinguish between law firms and other types of organizations. Nor can we see any principled basis for making such a distinction. Footnote 7 suggests that an in-house counsel for a corporation is sufficiently independent to ensure effective prosecution of claims, thus justifying fees. An attorney who works for a law firm certainly is no less independent than an attorney who works for a corporation. Therefore, it would make little sense to slice and dice *Kay*'s conclusion regarding "organizations" and apply footnote 7 to *some* organizations but not others.

This Court relied on *Kay* in holding that individual plaintiffs representing themselves could not obtain attorney's fees under FOIA. *Burka*, 142 F.3d at 1288-92. Because the *Burka* case involved an individual plaintiff, we had no occasion to address

footnote 7 of *Kay* and the Supreme Court's distinction between individual and organizational litigants.

Since *Kay*, two Courts of Appeals – the Fourth Circuit and the Fifth Circuit – have considered the application of attorney's fees statutes to law firms that represent themselves. Both courts persuasively relied on footnote 7 of *Kay* in holding that law firms are eligible for fees in such cases. In *Bond v. Blum*, two law firms that represented themselves in a copyright case sought attorney's fees under 17 U.S.C. § 505. 317 F.3d 385, 398 (4th Cir. 2003). Relying on footnote 7 of *Kay*, the Court of Appeals concluded that the rule against individual attorney-litigants recovering fees does not apply "in circumstances where *entities* represent themselves through in-house or *pro bono* counsel." *Id.* at 399 (emphasis added). An attorney-client relationship exists, the court reasoned, when "a member of an entity who is also an attorney represents the entity." *Id.* at 400. Although such a member is "interested in the affairs of the entity, he would not be so emotionally involved in the issues of the case so as to distort the rationality and competence that comes from independent representation." *Id.* The law firm "still remains a business and professional entity distinct from its members, and the member representing the firm as an entity represents the firm's distinct interests in the agency relationship inherent in the attorney-client relationship." *Id.* The Fifth Circuit similarly relied on footnote 7 of *Kay* and reached the same conclusion. *See Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.*, 236 F.3d 214, 218-19 (5th Cir. 2000) (holding that law firm that represented itself could recovery attorney's fees under state statute in diversity case). As a result of our decision today, the three Courts of Appeals that have considered the question have all concluded that a law firm representing itself in litigation may receive attorney's fees.

To sum up on the fees issue: There are policy arguments for

and against statutes that award attorney's fees to prevailing parties (the English rule), as well as statutes with one-way fee-shifting provisions such as the FOIA fees provision. Our task, however, is to interpret the statute as passed by Congress and construed by the Supreme Court. Baker Hostetler is a "complainant" eligible for fees under the plain text of the FOIA fees provision. The Supreme Court has made clear, moreover, that the exception to fees statutes for *individual* litigants who represent themselves does not extend to *organizational* litigants such as Baker Hostetler. Two Courts of Appeals have applied this Supreme Court precedent and held that a law firm that represents itself remains eligible for attorney's fees. We agree with those Courts of Appeals. We reverse and remand on the attorney's fees issue so that the District Court can determine whether Baker Hostetler "substantially prevailed" for purposes of the FOIA attorney's fees statute and is entitled to fees.

## VI

We affirm the District Court's judgment with respect to the adequacy of the search, the 17 third-party letters exempt from disclosure under 5 U.S.C. § 552(b)(4), and the Carreau notes. We reverse and remand for further proceedings with respect to the 50 sets of meeting notes withheld under 5 U.S.C. § 552(b)(5) and the attorney's fees determination.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting in part:

While I fully concur in Parts I–IV of the majority opinion, I disagree with the majority's conclusion that the United States Supreme Court's footnote observation in *Kay v. Ehrler*, 499 U.S. 432, 436 n.7 (1991), can—or should—be stretched to permit a law firm litigant acting through its member lawyers to collect attorney's fees under FOIA's fee-shifting provisions.

In *Kay*, the Supreme Court extended the general principle that a *pro se* litigant is not entitled to attorney's fees under a similar fee-shifting provision to include a lawyer-litigant appearing *pro se*. *See* 499 U.S. at 437–38. The Court determined that the overriding purpose of the fee-shifting provision of 42 U.S.C. § 1988 is to ensure the retention of "independent counsel" and a bona fide attorney-client relationship capable of promoting "effective prosecution of meritorious claims." *Id*. at 437. That purpose applies equally to a lawyer proceeding *pro se* as to a layman. *Id*. As the Court noted, "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation" because "[h]e is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforseen developments." *Id*. Further, "[e]thical considerations may make it inappropriate for [a lawyer proceeding *pro se*] to appear as a witness." *Id*.

Although *Kay* decided only the attorney's fee issue for a *pro se* lawyer-litigant, in a footnote the Court rejected the plaintiff's attempt to analogize his situation to the "organizations [Congress intended] to receive an attorney's fee even when they represented themselves" by noting that "an organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono*, and thus, there is always an attorney-client relationship." *Id*. at

436 n.7. The Court said nothing to indicate what type of "organization" it meant except to describe its legal representative as either in-house or unpaid. *Id*. This type of legal representation does not immediately bring to mind a law firm "organization," at least not the Court's specification of a *pro bono* lawyer.[1] And even the "in-house counsel" referenced in footnote 7 means either corporate counsel or public sector lawyers employed in state attorney's offices more naturally than it does members of a law firm. *See, e.g.*, *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363 (7th Cir. 2000) (State's attorney awarded attorney's fees for representing State under removal statute (28 U.S.C. § 1447(c))).

Nevertheless, using this "slim reed" dictum and disregarding the reasoning underlying the *Kay* holding, the majority construes the generic "organization" of *Kay*'s footnote 7 to include a law firm. Maj. Op. at 21–22.[2] Indeed, the majority goes further than

---

[1] An organization represented by "*pro bono* counsel," at least in my experience, refers to a public interest or other non-profit organization, not a law firm.

[2] The majority relies on the post-*Kay* decisions of two other courts of appeals. *See Bond v. Blum*, 317 F.3d 385, 398 (4th Cir. 2003); *Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.*, 236 F.3d 214, 218–19 (5th Cir. 2000). Although both circuits concluded that a law firm constitutes an organization within the meaning of *Kay*'s footnote 7, each proceeded more tentatively than the majority suggests. *See* Maj. Op. at 22–23. In *Blum* the Fourth Circuit recognized that "representation of a law firm by one of its members presents an increased risk of emotional involvement and loss of independence" but awarded attorney's fees because the record gave "no indication" of compromised independence. 317 F.3d at 400. The Fifth Circuit's invocation of *Kay* in *Metal Sales Mfg.* was even more conditional. The case involved a Louisiana statute under which the

the Supreme Court's description of an "organization" by concluding that "[a]n attorney-client relationship exists . . . when 'a member of an *entity* who is also an attorney represents the entity.' " Maj. Op. at 22 (quoting *Bond v. Blum*, 317 F.3d 385, 400 (4th Cir. 2003)) (emphasis added). Because "[t]he law firm 'still remains a business and professional entity *distinct* from its members, . . . the member representing the firm as an entity represents the firm's distinct interests in the agency relationship inherent in the attorney-client relationship.' " *Id*. at 23 (quoting *Blum*, 317 F.3d at 400) (emphasis added).

The majority's reasoning thus reduces to the following: (1) a law firm constitutes an entity with a legal identity distinct from its members; (2) an entity with a separate identity comes within the minimal description of "organizations . . . represent[ing] themselves" in *Kay*'s footnote dictum, *see Kay*, 499 U.S. at 436 n.7; and, therefore, (3) a law firm constitutes an organization eligible for attorney's fees even when it is represented by its members. Yet *Kay*'s observation regarding "organizations" is not based simply on the distinction between an entity and an individual. Instead, *Kay*'s emphasis on independent judgment and ethical considerations in holding lawyer-litigants barred from attorney's fees is wholly ignored by the majority.[3]

---

Louisiana state courts had in the past permitted attorney's fees awards to lawyers proceeding *pro se*. *See* 236 F.3d at 218; *Hoskins v. Ziegler*, 506 So.2d 146 (La. Ct. App. 1987). The Fifth Circuit noted *Kay*'s applicability only "if the Louisiana Open Account Statute were construed to require both a lawyer and a client." *Id*. at 219.

[3]Moreover, the majority fails to consider the implications of basing its reasoning on the separate identities of law firms as entities and its member lawyers as individuals. Under the majority's reading of *Kay* need an individual lawyer simply incorporate himself in order

4

Not only does the majority stretch *Kay*'s dictum past its breaking point but, in my view, it strays from our own precedent. In *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286 (D.C. Cir. 1998), we interpreted *Kay*, stressing the necessity of independent legal judgment, to deny attorney's fees not only to the lawyer-litigant but also to his law firm colleagues for their legal services rendered in a FOIA action. *See* 142 F.3d at 1291–92. Acknowledging an earlier case awarding fees to a lawyer-litigant for the work of co-counsel, *see Lawrence v. Bowsher*, 931 F.2d 1579 (D.C. Cir. 1991), we distinguished it based on the fact that co-counsel there were not "affiliated with the litigant's law practice." *Burka*, 142 F.3d at 1291. With no affiliation, as in *Lawrence*, we found the "independent counsel" that *Kay* emphasized. *Id.*; *see also Lawrence*, 931 F.2d at 1579. Relying on *Kay*, we then noted that the agency relationship which " 'the word attorney assumes' . . . does not exist . . . where the counsel are simply colleagues at the litigant's law firm working under the litigant's direction."*Burka*, 142 F.3d at 1291 (quoting *Kay*, 499 U.S. at 435). Thus, because the lawyer-litigant controlled legal strategy and the presentation of evidence and co-counsel were not "independent counsel *hired* by him to assist him," no genuine attorney-client relationship existed and attorney's fees were unavailable. *Id.* (emphasis added).

---

to be eligible for attorney's fees? And what of the sole practitioner with a "firm" identity formally separate from himself as an individual? In addition, the majority fails to address an inconsistency in its reliance on *Kay*: At the same time it splits the law firm entity from its members, it does so relying on the Supreme Court's description of organizations "represent[ing] *themselves*." *Kay*, 499 U.S. at 436 n.7 (emphasis added).

In practice, there is no difference between Burka's co-counsel working for, and under the direction of, their law firm colleague and Baker & Hostetler's members' representation of *all* of their affiliated partners, that is, the law firm itself. *Burka*'s denial of fees for the work of co-counsel working "in the same firm" as the individual lawyer-litigant applies equally to lawyers who constitute "the same firm." *See id*. at 1292. Just as Burka directed his affiliated co-counsel, Baker & Hostetler controlled and directed its quest for attorney's fees through its member lawyers, presumably acting as "the final filter," *Kooritzky v. Herman*, 178 F.3d 1315, 1324 (D.C. Cir. 1999), for litigation decisions.

Absent the "detached perspective" that comes from independent counsel, a law firm as an entity—as much as a lawyer-litigant—may have an interest in bringing suit if a fee-shifting statute is in effect "solely as a way to generate fees rather than to vindicate personal claims." *Falcone v. IRS*, 714 F.2d 646, 648 (6th Cir. 1983) ("We do not believe that Congress intended to so subsidize attorneys without clients.").[4] Moreover, in light of *Kay*'s focus upon independent legal judgment, a "rule that authorizes awards of counsel fees to *pro se* litigants . . . who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf." *Kay*, 499 U.S. at 438; *cf. Blum*, 317 F.3d at 400. Finally, it is possible, if not likely, that the firm members representing Baker & Hostetler in the FOIA action may be witnesses in seeking attorney's fees, thereby implicating the ethical concerns voiced in *Kay*. *See* 499 U.S. at 437.

---

[4]While the Court in *Kay* did not use *Falcone*'s interest analysis, the Court described *Falcone* as requiring the same "detached and objective perspective" that it found lacking in *Kay*. *Compare Kay*, 499 U.S. at 434 n.4 (quoting *Falcone*, 714 F.2d at 647) *with id*. at 437.

The Supreme Court recently reaffirmed, in a different context, the decision of a sister circuit "to err on the side of caution" when facing "imprecision in [the Court's] prior cases" by "neither forc[ing] . . . nor bur[ying] the issue" but instead by "follow[ing] [the Court's precise holding] until expressly overruled by the Supreme Court," even if the holding has since been undermined by intervening precedent. *Eberhart v. United States*, 126 S.Ct. 403, 404, 407 (2005) (noting tension between Court's earlier holding that filing deadlines are "jurisdictional" and intervening precedent finding other time prescriptions non-jurisdictional). Such caution is even more apt here. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 377 (2002) (declining "to turn dictum into holding"); *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) ("invoking our customary refusal to be bound by dicta"). Rather than relying on *Kay*'s footnote dictum to "force" a holding that a law firm litigant is eligible for attorney's fees under FOIA based on its members' work, I would follow Circuit precedent—as well as the *holding* in *Kay*—and find Baker & Hostetler ineligible for attorney's fees under FOIA. Accordingly, I respectfully dissent from Part V of the majority opinion.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Issued December 22, 2006

No. 05-5185

BAKER & HOSTETLER LLP,
APPELLANT

v.

UNITED STATES DEPARTMENT OF COMMERCE,
APPELLEE

―――――

Consolidated with
05-5350

―――――

On Motion for Recusal

―――――

KAVANAUGH, *Circuit Judge*: Appellant Baker Hostetler submitted a motion requesting my recusal under the federal recusal statute if, in my prior work for President George W. Bush, I "personally participated on issues relating to the *Softwood Lumber* dispute between the United States and Canada." Mot. at 2; *see* 28 U.S.C. § 455. I denied the motion because recusal is not supported by or appropriate under either the specific provisions of § 455(b) or the general provision of § 455(a).

In this Freedom of Information Act litigation, Baker Hostetler seeks certain documents relating to the Department of

Commerce's investigation of Canadian softwood lumber imports. The Department imposed duties on Canadian softwood lumber in early 2002. Later that year, Baker Hostetler filed two FOIA requests for Department documents. With respect to the documents that are at issue in this appeal, the Department claimed FOIA exemptions 4 and 5. *See* 5 U.S.C. § 552(b)(4)-(5). The District Court granted summary judgment to the Department. On appeal, Baker Hostetler has challenged the District Court's decision not to order disclosure of those documents and has moved for my recusal.

Section 455(b)(3) of Title 28 is the provision of federal law that specifically addresses the recusal of federal judges who formerly served in government. The statute requires recusal when a judge "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). A "proceeding" is defined to include "pretrial, trial, appellate review, or other stages of litigation." 28 U.S.C. § 455(d)(1).

During my service in the Executive Branch, I did not participate in any stage of this Baker Hostetler litigation, nor did I express an opinion concerning the merits. Therefore, § 455(b)(3) does not support my recusal in this case.

Baker Hostetler also cites the requirement under § 455(b)(1) that a judge recuse if he has "personal knowledge of disputed evidentiary facts concerning the proceeding." Mot. at 4. The questions in the Baker Hostetler case focus on whether particular Department of Commerce documents fall within certain FOIA exemptions. While serving in the Executive Branch, I did not obtain personal knowledge of any disputed evidentiary facts in this FOIA case.

Section 455(a)'s general "catch-all" provision requires recusal when a judge's "impartiality might reasonably be questioned." That section covers situations not addressed by § 455(b) that nonetheless might be appropriate for recusal. In § 455(b)(3), however, Congress clearly and specifically addressed the effect of prior government service on a judge's recusal obligations. Before enacting that law in 1974, Congress carefully studied the issue, including obtaining guidance from the then-recently amended ABA Code of Judicial Conduct. *See* H.R. Rep. No. 93-1453 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6351. In the statute, Congress chose to draw the recusal line for prior government employment at participation in the proceeding or expression of an opinion concerning the merits of the particular case in controversy. It bears emphasis, moreover, that Congress chose the "personal-participation" rule for recusal based on prior *government* employment while simultaneously enacting a different and far broader "associational" rule for recusal based on prior *law firm* employment. *See* 28 U.S.C. § 455(b)(2).

As to prior *government* work, Congress was aware of the deeply rooted tradition of high-level Executive Branch and Legislative Branch officials assuming the bench. Based on that history and to avoid making it all but impossible for judges with such backgrounds to perform their judicial duties in many cases, Congress established the specific "personal-participation" rule in § 455(b)(3). In determining whether recusal is appropriate or inappropriate based on prior government employment, judges must respect the line drawn by Congress.

To be sure, Congress could not foresee every conceivable recusal scenario that might occur. Therefore, rare and extraordinary circumstances arising out of prior government employment – but not covered or envisioned by § 455(b)(3) –

conceivably could occur and support recusal under § 455(a). Even so, this case is not such an extraordinary situation.

Baker Hostetler also contends that I should recuse if I provided policy advice to the President on the softwood lumber issue. Mot. at 3. Even if the factual premise of this claim were accurate, it would not provide a basis for recusal: Consistent with the line drawn by Congress in § 455(b)(3), judges who previously participated in policy matters and provided policy advice in government do not ordinarily recuse in litigation involving those policy issues. That principle was exemplified recently by Justice Breyer's participation in consideration of the constitutionality of the Sentencing Guidelines after serving as a member of the Sentencing Commission that helped draft the Guidelines. *See United States v. Booker*, 543 U.S. 220 (2005); *see also Laird v. Tatum*, 409 U.S. 824, 839 (1972) (Rehnquist, J.) (declining to recuse); *id.* at 831 ("[N]one of the former Justices of this Court since 1911 have followed a practice of disqualifying themselves in cases involving points of law with respect to which they had . . . formulated policy prior to ascending to the bench."); *id.* (describing how Justice Black sat on cases assessing the constitutionality of the Fair Labor Standards Act after being one of its principal authors while a Senator); *id.* at 831-32 (describing how Justice Frankfurter sat on a case interpreting the scope of the Norris-LaGuardia Act after playing an important role in drafting it); *id.* at 832 (describing how Chief Justice Vinson sat on cases involving legislation he helped draft while in the House of Representatives); *cf. Carter v. West Publ'g Co.*, No. 99-11959-EE, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999) (Tjoflat, J.) ("Courts have uniformly rejected the notion that a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case, even when that position is directly implicated in the case before the court."); *Schurz Communications v. FCC*, 982 F.2d 1057, 1061-62 (7th Cir.

1992) (Posner, J.); *In re Executive Office of the President*, 215 F.3d 25, 25-26 (D.C. Cir. 2000) (Tatel, J.).

Since assuming judicial office, I have recused as appropriate in several cases. *See, e.g.*, *United States v. Rayburn House Office Bldg., Room 2113, Wash., DC 20515*, No. 06-3105 (D.C. Cir. July 28, 2006) (order); *Cobell v. Kempthorne*, 455 F.3d 317 (D.C. Cir. 2006). In this case, however, recusal is not supported by or appropriate under either the specific provisions of § 455(b) or the general provision of § 455(a). Therefore, I denied the motion.