# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 15, 2015          Decided January 15, 2016

No. 14-5171

NATIONAL SECURITY COUNSELORS,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY AND UNITED STATES
DEPARTMENT OF DEFENSE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00442)

———

*Bradley P. Moss* argued the cause for appellant. With
him on the briefs was *Kelly B. McClanahan.*

*Mark W. Pennak*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Benjamin C. Mizer*, Acting Assistant Attorney General, and
*Leonard Schaitman*, Attorney.

Before: TATEL and PILLARD, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: An individual who litigates *pro se* is ineligible for attorney's fees under the Freedom of Information Act (FOIA); the same is not ordinarily true of an organization that represents itself. This appeal asks whether a particularly small nonprofit corporation that represented itself is barred from recovering attorney's fees under FOIA for the same reasons that render a *pro se* individual ineligible.

Congress sought to encourage meritorious FOIA litigation by making any "complainant" who substantially prevails eligible to recover reasonable attorney's fees. 5 U.S.C. § 552(a)(4)(E)(i). Courts have recognized an exception from FOIA fee eligibility—which we have described as "narrow"—barring attorney's fees for legal work by any individual who successfully represents himself *pro se*. *See Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 324-25 (D.C. Cir. 2006) (citing *Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991)); *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288-89 (D.C. Cir. 1998). That exception is consistent with the broad statutory text of FOIA's fee provision because the statutory reference to "attorney" fees contemplates an agency relationship that no individual can have with her- or himself. *See Burka*, 142 F.3d at 1288 (citing *Kay*, 499 U.S. at 435-36). It is the agency relationship between a lawyer and client that serves fee-shifting's goal of enlarging access to independent, objective legal advice. *Id.* Thus, although *pro se* individuals sometimes prevail, they are ineligible for attorney's fees.

The district court held National Security Counselors, Inc. (NSC), a small, nonprofit corporation registered in Virginia, ineligible for fees. A lawyer who was one of the firm's three co-founders and serves as its Executive Director represented NSC in litigation to obtain, under FOIA, documents that the government initially withheld. The court emphasized that the

attorney does virtually all of NSC's work, including the legal work for which it seeks fees in this case. It therefore treated NSC as "a one-man operation" ineligible for fees under the *pro se* litigant exception. *Nat'l Sec. Counselors v. CIA*, 15 F. Supp. 3d 88, 93 (D.D.C. 2014).

The district court failed to account correctly for NSC's status as a nonprofit corporation. The Supreme Court has drawn a clear distinction between an "organization, which is always represented by counsel," and a *pro se* individual. *Kay*, 499 U.S. at 436 n.7. We have drawn the same line between organizations and individuals and held that "an organization remains eligible for attorney's fees even when it represents itself in litigation." *Baker*, 473 F.3d at 315 (fees under FOIA); *accord Bond v. Blum*, 317 F.3d 385, 399-400 (4th Cir. 2003) (fees under 17 U.S.C. § 505); *Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.* (*Gold*), 236 F.3d 214, 218-19 (5th Cir. 2000) (fees under the Louisiana Open Account Statute). In keeping with *Kay*, *Baker*, and the decisions of our sister circuits, we hold that a corporation with a legal identity distinct from the attorney who represents it in litigation is eligible to recover attorney's fees under FOIA. Because NSC is such a corporation, it is not barred by the *pro se* litigant exception.

I.

NSC is a tax-exempt, nonprofit Virginia corporation. In 2009, Kelly B. McClanahan co-founded NSC with Bradley P. Moss and Sean Heare. The record sheds light on the firm's leadership and organizational structure. NSC operated initially as a tax-exempt, public-interest nonprofit association. It was established to serve four primary objectives:

> [1] to lawfully acquire from the government material related to national security matters and distribute it to

the public, [2] to use this material in the creation of original publications discussing the respective subjects, [3] to advocate for intelligent reform in the national security and information and privacy arenas, and [4] to provide a low-cost alternative to certain deserving clients involved in security law or information and privacy law-related proceedings.

J.A. 26 (quoting http://nationalsecuritylaw.org).

In January 2011, the organization took the further step of incorporating under Virginia law. Since then, it has conducted its activities as a nonprofit corporation under the name National Security Counselors, Inc. Virginia law imposes governance obligations on nonprofit corporations like NSC. Anyone acting as a director to such a corporation owes a duty of loyalty to the interests of the corporation and must guard against conflicts of interest. *See Byelick v. Vivadelli*, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999); *see also Dodge v. Trs. of Randolph-Macon Woman's Coll.*, 661 S.E.2d 805, 809 (Va. 2008) (applying corporate directors' duties to directors of nonstock charitable corporation). A director must discharge all directorial duties "in accordance with his [or her] good faith business judgment of the best interests of the corporation." Va. Code § 13.1-870(A); *see also Lake Monticello Owners' Ass'n v. Lake*, 463 S.E.2d 652, 656 (Va. 1995). Virginia law subjects a nonprofit corporation like NSC to corporate recordkeeping requirements related to meetings, accounting, membership, articles of incorporation, and bylaws. *See* Va. Code § 13.1-932(A)-(C), (E).

Record evidence identifies three NSC board members—Kelly McClanahan, Bradley Moss, and Sean Heare—each of whom wears multiple hats in working part time for NSC. McClanahan, who specializes in national security and

information privacy law, is NSC's CEO and Executive Director. He is an experienced litigator of whistleblower and FOIA matters who has dedicated much of his legal career to advocating for government transparency in the national security arena. McClanahan serves as the organization's lead counsel in all cases before federal agencies and courts. He signs and submits all FOIA requests on NSC's behalf and acts as the principal liaison between NSC and federal agencies. He is often the sole attorney of record on NSC's cases, with "Of Counsel" attorneys and a "rotating class of legal interns" sometimes supporting those litigation efforts. J.A. 105.

Moss is NSC's Deputy Executive Director and the corporation's registered agent. According to McClanahan's declaration, Moss "occasionally" "serves in an attorney capacity" for NSC and has appeared on the organization's behalf in at least one FOIA case. J.A. 105; *see also* Docket, *Nat'l Sec. Counselors v. CIA*, No. 12-284 (D.D.C.). Heare is NSC's Information Director and serves as the organization's information security expert.

In pursuit of its stated public-interest goal to increase the transparency of the national security activities of the United States government, NSC frequently requests documents from federal agencies under FOIA. NSC also litigates cases, both in pursuit of its own FOIA requests, *see, e.g.*, J.A. 18; *Nat'l Sec. Counselors v. DOJ*, No. 15-5117 (D.C. Cir. 2015); *Nat'l Sec. Counselors v. CIA*, No. 12-284 (D.D.C.); *Nat'l Sec. Counselors v. CIA*, No. 11-443 (D.D.C.), and on behalf of other clients with national-security-related claims, *see, e.g.*, *Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015).

Between April and December 2010, NSC submitted four FOIA requests for disclosure of specified records of the Central Intelligence Agency and the Defense Intelligence

Agency. Each of the requests stated that NSC was "a non-profit organization under Virginia law." J.A. 65, 71, 76, 82. Unsatisfied with the agencies' responses to those requests, NSC filed this lawsuit, accompanied by NSC's corporate disclosure statement as required under Local Civil Rule 7.1.[1] McClanahan was lead counsel for NSC. He was the only lawyer who entered an appearance in the district court. After a couple years of dueling motions and settlement negotiations, NSC was satisfied with the agencies' identification and disclosures of responsive documents and so voluntarily dismissed the suit.[2]

NSC petitioned under FOIA for $14,794.90 in costs and attorney's fees for McClanahan's work between January 27, 2011, and June 17, 2013. *See* NSC Fee Petition at 1, *Nat'l Sec. Counselors v. CIA*, No. 11-442 (D.D.C.), ECF No. 55. Without taking a position as to whether it might have been eligible for them, NSC did not seek fees for work in the underlying agency proceedings during the period when it was operating as a tax-exempt association prior to its incorporation. Nor did it request fees for work performed for NSC by legal professionals other than McClanahan.

---

[1] Local Civil Rule 7.1 applies only to corporations and requires their counsel of record to file a "certificate listing any parent, subsidiary or affiliate of [the corporation] which, to the knowledge of counsel, has any outstanding securities in the hands of the public." D.D.C. Local Civ. R. 7.1.

[2] For purposes of this appeal, we give no consideration to NSC's references to statements purportedly made by the parties during the course of settlement negotiations. As NSC concedes, those alleged statements were "not part of the record below," Appellant's Reply 6, and therefore fall outside the appellate record. *See* Fed. R. App. P. 10; *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015).

On February 2, 2014, the district court denied NSC's fee petition. The court relied on the Supreme Court's decision in *Kay* to hold NSC ineligible for attorney's fees. The court correctly observed that "this Circuit permits an 'organization' to recover attorney's fees for its 'in-house counsel' where the attorney acts as an agent on behalf of the corporation." *Nat'l Sec. Counselors*, 15 F. Supp. 3d at 92. But NSC was not an eligible organization, in the court's view, because McClanahan does the lion's share of NSC's work and plays a leadership role in the nonprofit corporation and NSC was the only client in the case. The judge saw "little, if any, distinction" between NSC and McClanahan, *id.*, and so cast NSC as essentially McClanahan's "one-man operation," *id.* at 93. Although she acknowledged NSC's corporate status and website, and mentioned unrefuted evidence that people other than McClanahan act as officers and part-time staff of NSC, the judge nonetheless demanded further evidence that NSC "publicly identifies itself as an incorporated entity, or in any other way distinct from Mr. McClanahan." *Id.* She noted that McClanahan's colleague Bradley Moss appeared at least once as NSC's attorney in a different FOIA case, but discounted that as "too slim a reed" to overcome other evidence showing that NSC is nothing more than "Mr. McClanahan as a sole practitioner." *Id.* She emphasized McClanahan's statement—made in another case in which NSC sought discovery of information subject to a protective order—that, as NSC's counsel and Executive Director, he was "in effect both the counsel *and* the party." *Id.* The court thus treated NSC in this case not as a "client separate from Mr. McClanahan," but equivalent to a *pro se* individual "ineligible for an award of attorney's fees" under *Kay* and *Burka*. *Id.* at 93-94.

NSC timely sought reconsideration of the fee-denial order under Federal Rules of Civil Procedure 59 and 60. The

district court denied the motion in relevant part, reaffirming its determination that NSC is ineligible for attorney's fees under FOIA because "McClanahan *is* National Security Counselors." Order Granting in Part and Denying in Part Pl.'s Mot. for Recons. at 3, *Nat'l Sec. Counselors v. CIA*, No. 11-442 (D.D.C.), ECF No. 73.[3] This appeal followed.

## II.

We review *de novo* questions of law, including the legal standards governing fee eligibility under FOIA. *See Edmonds v. FBI*, 417 F.3d 1319, 1322 (D.C. Cir. 2005); *see also Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009); *cf. Gold*, 236 F.3d at 216 (concluding that "[t]he district court's resolution of whether an attorney representing himself could collect fees under the open account statute is a conclusion of law we review de novo").

## A.

The question in this appeal is whether NSC is ineligible for attorney's fees under FOIA's fee-shifting provision. The government invokes the judicially created exception that bars individuals who represent themselves from recovering fees. Under that exception, individuals who successfully pursue their own cases *pro se*, whether they are lawyers or not, are ineligible to recover attorney's fees. *Kay*, 499 U.S. at 433-36; *Baker*, 473 F.3d at 324; *Burka*, 142 F.3d at 1289-90. NSC is ineligible by the same token, the government contends, because "McClanahan acted as a *pro se* attorney in this matter." Appellees' Br. 15. NSC, for its part, contends that it

---

[3] On reconsideration, the District Court correctly determined that NSC was entitled to the $350 in litigation costs irrespective of whether NSC is, in effect, a *pro se* individual litigant ineligible for attorney's fees.

has a legal status distinct from its in-house counsel, McClanahan, and is therefore not ineligible for fees under *Kay* and *Burka*. We agree with NSC.

While individuals who represent themselves may not recover fees, organizations that represent themselves may so recover. *Baker*, 473 F.3d at 324. The question here is whether NSC's characteristics, including its small size and McClanahan's large role within it, warrant treating NSC like an individual rather than an organization. We think they do not. In reaching this conclusion, we are influenced by the statutory text, the Supreme Court's decision in *Kay*, the ensuing decisions of our court, and those of other circuits.

FOIA authorizes district courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The statute contains no express limitation on who counts as an eligible "complainant" or whose work is compensable by payment of "attorney fees." *See Baker*, 473 F.3d at 324. We have interpreted section 552(a)(4)(E)(i) to require a prevailing plaintiff to show that it is both eligible for and entitled to fees. *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). Once eligibility is established, a plaintiff must further demonstrate entitlement to fees "under the four criteria that the court weighs in determining whether attorney's fees are appropriate." *Burka*, 142 F.3d at 1288 (listing the criteria as "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents" (quotation marks omitted)). This appeal addresses only the threshold question whether, assuming NSC substantially prevailed, it is eligible

for fees; we do not reach the further questions whether NSC substantially prevailed or whether, if eligible, NSC is entitled to fees.[4]

The Supreme Court in *Kay* held that an individual who represented himself and prevailed in his civil rights case was ineligible for attorney's fees under the civil rights fee-shifting statute, 42 U.S.C. § 1988. 499 U.S. at 435-37. The Court concluded that "[n]either the text of the statute [n]or its legislative history provides a clear answer" to whether *pro se* litigants are eligible for fees, but noted that section 1988's provision for "attorney" fees makes it likely that Congress "contemplated an attorney-client relationship as the predicate for an award under § 1988." *Id.* at 435-36. Congress enacted section 1988 to ensure "the effective prosecution of meritorious claims," *id*. at 437, by enabling victims of civil rights violations to vindicate their rights with the assistance of competent and independent counsel, *id*. at 436. The Court reasoned that authorizing fee awards for *pro se* plaintiffs would not serve the goal of promoting "the benefit of the advice and advocacy of an independent attorney," *id*. at 435, but instead might encourage self-representation by any plaintiff who "considered himself competent to litigate on his own behalf," *id*. at 438. The Court identified the "overriding statutory concern" as "obtaining independent counsel for victims of civil rights violations," *id*. at 437, and concluded that "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case," *id.* at 438.

*Kay* distinguishes individuals who represent themselves from organizations that do the same. *Id*. at 436 n.7. The

---

[4] Because the district court denied NSC's fee petition solely on eligibility grounds, it did not consider the four entitlement factors.

Court recognized that "an organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono,* and thus, there is always an attorney-client relationship." *Id*. The statutory focus on "an attorney-client relationship as the predicate for an award," *id*. at 436, therefore supports fees for self-representing organizations even while it weighs against them for *pro se* individuals.

For many years before *Kay*, "it was settled law in this circuit that attorneys who prevailed in FOIA actions brought on their own behalf were eligible to obtain attorney's fees." *Burka*, 142 F.3d at 1288. Indeed, before *Kay*, we had held that even *non-*attorneys who prevailed could recover FOIA fees. *See Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 5-6 (D.C. Cir. 1979). *Kay*, however, constrained us to change our position. In *Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993), we applied to a *pro se* non-attorney under FOIA the fee eligibility exception for *pro se* individuals that *Kay* had recognized under section 1988. *Id.* at 259-60. Five years later in *Burka*, we again applied *Kay* in the FOIA context and held that attorneys who proceed *pro se* are equally ineligible for FOIA fees. 142 F.3d at 1289-90.

We then had occasion in *Baker* to consider how *Kay* and its narrow *pro se* exception might apply to a law firm partnership seeking fees for having represented itself in litigation. Noting that FOIA's fee provision contains "no exception for a law firm that represents itself," we held that the firm qualified under FOIA's plain language as a "complainant" eligible for fees. *See* 473 F.3d at 324-26 (citing 5 U.S.C. § 552(a)(4)(E)(i)). *Kay* did not instruct otherwise, in our view, for it only removed "individual plaintiffs who represent themselves" from the universe of fee eligibility. *Id.* at 325.

*Baker* is consistent with the law of other circuits, which have concluded that, for fee-eligibility purposes, an organization is different from an individual litigant. We are not aware of any federal court of appeals that has relied on *Kay*'s *pro se* litigant exception to deny attorney's fees to any kind of self-representing organization, much less a *bona fide* corporation represented by in-house counsel. For example, the Fourth Circuit in *Bond* held that a law firm's representation by its own lawyers did not render the firm ineligible for fees, recognizing that there can be the requisite agency relationship even where there is a close alignment and institutional connection between attorney and client, as is the case when "a State's own attorney represent[s] the State" or "in-house counsel represent[s] the corporation." 317 F.3d at 400. That court concluded that "the principles of *Kay*" simply "do not apply where entities represent themselves through in-house or *pro bono* counsel." *Id.* at 399. The Fifth Circuit understood *Kay* in a similar manner and held that, "when an organization is represented by an attorney employed by the organization, the attorney has a status separate from the client." *Gold*, 236 F.3d at 219-20. Relying on the same distinction between organizations and individuals, the Eighth Circuit saw "no meaningful distinction between a law firm and *any other organization* on the issue of whether there exists an attorney-client relationship between the organization and its attorney" and so held that, "where an attorney represents his or her own firm, *Kay* does not forbid the award of attorneys' fees." *Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Trust v. Goding*, 692 F.3d 888, 898 (8th Cir. 2012) (emphasis added).

Consistent with that line of precedent, we hold that a *bona fide* corporation with a legally recognized, distinct identity from the natural person who acts as its lawyer is eligible for attorney's fees under FOIA provided it

substantially prevails. Even a small corporation like NSC is generally eligible for fees under FOIA. The existence of an entity, formally separate from the natural person acting as its lawyer, makes the difference. That conclusion is strongly presaged by *Baker*, which speaks in categorical terms: *Kay* "made crystal clear" that the "exception for *individual* plaintiffs who represent themselves does not apply to *organizations.*" *Baker*, 473 F.3d at 325 (emphasis in original). "An attorney who works for a law firm is certainly no less independent than an attorney who works for a corporation." *Id.* Lawyers represent many different kinds of organizations, but there is always an attorney-client relationship between an organization and its lawyer. We thus declined "to slice and dice *Kay*'s conclusion regarding 'organizations' and apply footnote 7 to *some* organizations but not others." *Id.*

The relevant doctrinal line is between a natural person going it alone, who is ineligible, and a person or organization who is represented by counsel and thus eligible for attorney's fees. As the Supreme Court explained in *Kay*, an organization "is always represented by counsel," but an individual is not. 499 U.S. at 436 n.7. The attorney-client relationship between an organization and its counsel requires the lawyer to step into a role, distinct from his personal capacity, in which he is legally and ethically constrained as an independent, zealous, and loyal representative of the organization. *See* A.B.A. Model R. Prof'l Conduct 1.3 cmt. 1 (2013); A.B.A. Model R. Prof'l Conduct 1.13(b) (2013); *cf. Kay*, 499 U.S. at 436 n.7; *Baker*, 473 F.3d at 325. Even a lawyer for an organization he founded and runs must fulfill his professional lawyering responsibilities to that organization. He may not merely serve his own preferences, moods, or tastes. He is legally and ethically required to be loyal to client interests, as distinct from his own. *See, e.g.*, *In re Gonzalez*, 773 A.2d 1026, 1031

(D.C. 2001) ("[T]he attorney owes a fiduciary duty to his client and must serve the client's interests with the utmost loyalty and devotion."). An attorney who works in an organization has a legally recognized, distinct identity from that of the organization, putting the lawyer in an agency relationship "sufficiently independent to ensure effective prosecution of claims, thus justifying fees." *Baker*, 473 F.3d at 325 (citing *Kay*, 499 U.S. at 436 n.7).

The distinction between organizations and individuals is all the more pronounced in the context of a corporation: indeed, it is well settled that "a corporation may appear in the federal courts *only* through licensed counsel." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) (emphasis added); *see also Embassy of Fed. Rep. of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 92, 97 (D.D.C. 2012) (noting that even though individual could appear *pro se* in his personal capacity, he cannot do so as the trustee on behalf of a company). The law treats corporations—even small ones—as distinct from the natural persons that create or work for them. A corporation is "viewed as a distinct entity, even when it is wholly owned by a single individual." *Quinn v. Butz*, 510 F.2d 743, 757 (D.C. Cir. 1975) (footnote omitted).

In various contexts, the law takes seriously the formal line between a corporation and a natural person, even when the corporation is, in effect, a one-person firm. *See, e.g.*, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-65 (2001) (holding that closely held corporation and its sole shareholder are distinct for purposes of federal Racketeer Influenced and Corrupt Organizations Act). Individuals experience burdens as well as benefits associated with the separation between a company's rights and their own. *See, e.g.*, *United States v. White*, 322 U.S. 694, 699 (1944) (holding that Fifth Amendment privilege against self-

incrimination "is a purely personal one" that "cannot be utilized by or on behalf of any organization, such as a corporation"); *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010) (holding that "a one-person corporation cannot avail itself of the Fifth Amendment privilege" to resist grand jury subpoena of corporate records); *Williams v. Mordkofsk*y, 901 F.2d 158, 164 (D.C. Cir. 1990) (holding that individual owners lacked standing to assert the loss of a business opportunity that belonged to their firm and not to them individually, noting that, "[h]ad [the corporation] declared bankruptcy, it is certain that the [owners] would not be so quick to request that we disregard the corporate form"). "One-person corporations are authorized by law and should not lightly be labeled sham." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471 (2000).

It makes sense to respect the corporate form and the distinctness of the lawyer from the organization, and to hold *Kay*'s *pro se* litigant exception inapplicable in cases of corporate self-representation. To incorporate NSC as a Virginia "nonstock corporation," its founders were required to expend time and resources drafting articles of incorporation, filing those articles with the Office of the Clerk and paying the filing fee, obtaining a certificate of incorporation, delineating a process for the selection of directors, and appointing a registered agent, among other requirements. *See, e.g.*, Va. Code Ann. § 13.1-804 (enumerating the filing requirements for Virginia nonstock corporations); *id.* § 13.1-819 (listing requirements for articles of incorporation); *id.* § 13.1-829 (setting forth restrictions on names); *cf. Wagner v. Fed. Election Comm'n*, 793 F.3d 1, 30 (D.C. Cir. 2015) (en banc) (recognizing "the not insignificant costs involved in both establishing and operating as an LLC").

In addition, NSC's section 501(c)(3) status places operational limits on the firm's activities and further constrains its interests, as distinct from those of its board or staff. To qualify for tax-exempt status under section 501(c)(3) of the Internal Revenue Code, a corporation must serve defined public interests and operate under certain constraints. A corporation like NSC must be "organized and operated exclusively for . . . charitable . . . or educational purposes . . . ," 26 U.S.C. § 501(c)(3), and it must "engage[] primarily in activities which accomplish" such purposes, 26 C.F.R. § 1.501(c)(3)-1(c)(1). Because a tax-exempt organization must "serve[] a public rather than a private interest," it may not be "organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests." *Id.* § 1.501(c)(3)-1(d)(ii).

The government downplays the legally established distinction between NSC and its attorney and contends that NSC has failed to "demonstrate a sufficiently independent arms-length relationship between the client and the attorney to offer 'independent third party' legal advice and assistance." Appellees' Br. 31. But that argument confuses the rule's rationale with the rule itself. Precedent does not call on courts to evaluate the objectivity and independence of each particular attorney-client relationship, or of counsel's legal advice in the individual case. Instead, the cases make structural judgments at a higher level of generality, distinguishing self-representing individuals, who are not eligible for FOIA fees, from organizational litigants like corporations, that are. *See Baker*, 473 F.3d at 325 (relying on *Kay*, 499 U.S. at 436 n.7). No doubt, sometimes an individual gives himself objective and highly effective advice, and attorney advice to organizational clients may at times lack

independent, arms-length judgment. As we understand the binding precedent, however, such facts would neither render eligible the *pro se* individual whose legal decisions are objectively sound, nor defeat the eligibility of a prevailing corporation whose lawyer's advice lacked independence. *See id.* Our precedent instead looks to an entity's status as a proxy, however rough, for the independence and objectivity of the advice; it does not require an organization-by-organization, attorney-by-attorney, or case-by-case inquiry into either of those attributes.

For example, even as the Supreme Court in *Kay* held *pro se* litigants ineligible for fees because of the risk that they would lack "the judgment of an independent third party" and be governed by "emotion" rather than "reason," 499 U.S. at 437, the Court acknowledged the reality that the plaintiff before it "obviously handled his professional responsibilities . . . in a competent manner," 499 U.S. at 435. Conversely, when the Fourth Circuit in *Bond* held that a law firm partner was eligible for fees for representing his firm, it acknowledged the "increased risk of emotional involvement and loss of independence" when a firm's own lawyers represent it. 317 F.3d at 399. But that was not dispositive because the firm "still remain[ed] a business and professional entity distinct from its members" with "distinct interests." *Id.* at 400.[5] The *Bond* court thus categorically distinguished

---

[5] We implicitly recognized in *Burka* the importance of the formal identification of the party in interest. The plaintiff there claimed he had clients apart from himself, but he was ineligible for attorney's fees because he "chose to bring the case in his own name and to maintain the case in his own name throughout the litigation." 142 F.3d at 1290; *see also Pub. Emps. For Envtl. Responsibility v. U.S. Int'l Boundary & Water Comm'n*, 968 F. Supp. 2d 85, 87 (D.D.C. 2013) (observing that "it is only the party-in-interest—in other words, the party in whose name the action was brought by or

precedent denying fees to parents representing their own children under the Individuals with Disabilities Education Act, who had been deemed "generally incapable of exercising sufficient independent judgment on behalf of their children to ensure that 'reason, rather than emotion,' will dictate the conduct of the litigation." *Bond*, 317 F.3d at 399 (quoting *Doe v. Bd. of Educ. of Balt. Cty.*, 165 F.3d 260, 263 (4th Cir. 1998)). *Bond*, by contrast, addressed a distinct type of circumstances "where entities represent themselves through in-house or *pro bono* counsel." *Id.*

To be sure, *Kay* teaches that the purpose of the *pro se* litigant exception to fee eligibility is to avoid creating a disincentive to hire independent and objective counsel. 499 U.S. at 438. The exception serves that purpose because it takes away the plaintiff's temptation to represent himself and keep the fees as reimbursement for his own time if he prevails. Removing that temptation encourages the individual to hire a lawyer and thereby gain the benefit of dispassionate legal advice. But we need not worry that a corporation will miss out on independent advice when, as happened here, it opts for in-house over outside counsel. As *Kay* highlighted, there is an attorney-client relationship between in-house counsel and a corporation, *id.*, and, as we have explained, that relationship is not an empty formalism. Even if in-house counsel plays a major operational role within the corporation, as McClanahan did here, and is personally committed to the objectives of a corporation, as many lawyers are, a lawyer wearing two professional hats is legally required to maintain the distinction between his roles as a lawyer and a director or member of the corporation. Here, for example, McClanahan, in his capacity as the corporation's lawyer, was constrained to

against—that concerns the court; no one else is considered a *pro se* litigant for attorneys'-fees purposes").

act to further NSC's public-regarding, nonprofit objectives, and to respect its board-governed, corporate interests as independent of his own. *See, e.g.*, A.B.A. Model R. Prof'l Conduct 1.13 (identifying ethical constraints when client is an organization).

The government nevertheless suggests that we conduct a case-specific, fact-intensive inquiry into the nature of the specific organization and its relationship to its in-house attorney. That approach strikes us as anomalous and untenable for at least two reasons. First, it likely would result in differing treatment among and within categories of organizational plaintiffs—the very result we sought to avoid in *Baker* by cautioning against allowing fees to some self-representing organizations and not others. 473 F.3d at 325. Second, even as it would have us disregard the familiar legal distinction between organizations and individuals, the government has not proposed a readily administrable and clear test for determining whether an organization is independent enough to be eligible for fees under *Baker*. Proof that a putative organization lacks a legal identity distinct from that of the natural person(s) that comprise it might suffice to render it ineligible for FOIA fees, but the government has not persuasively made that case here.

### B.

The district court applied the wrong legal standard and thus erred in concluding that NSC is ineligible for fees as a *pro se* individual litigant under *Kay* and *Burka*.

There is no question that NSC is a *bona fide* corporation, and that it has been during the entirety of this litigation and

the underlying work for which NSC seeks fees.[6]  In support of its fee petition, NSC established that it was a *bona fide* nonprofit corporation with its own legal identity.   The government, by contrast, made no showing that could have supported the district court's decision to disregard NSC's corporate status.  It failed to present evidence that, although duly incorporated, NSC is "simply the alter ego" of McClanahan.  *Quinn*, 510 F.2d at 758.  The government did not demonstrate that McClanahan dominates NSC in such a way that "negate[s] [the corporation's] separate personality." *Id.*; *see also Founding Church of Scientology of Wash., D.C., Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C. Cir. 1986) ("Under the alter ego theory, the court may ignore the existence of the corporate form . . . .").  Neither the small size of a corporation nor the "deliberate adoption and use of a corporate form in order to secure its legitimate advantages" are reasons to apply the *pro se* exception.  *Quinn*, 510 F.2d at 758.    McClanahan's   pervasive   involvement   in   the corporation's operations and litigation efforts does not negate NSC's separate corporate status.

Finally, the government contends that the district court's holding is "[m]ost tellingly" supported by NSC's statement regarding civil discovery in a different case before a different judge, Appellees' Br. 33, but that statement cannot bear the weight the government assigns it.   The government quotes McClanahan, as NSC's Executive Director and counsel of record in that other case, saying that he was "in effect both the counsel *and* the party."  *Id.* (quoting J.A. 101 n.1 (Plaintiff's Reply In Support of its Motion to Compel Compliance With

---

[6]  NSC does not seek fees for the administrative FOIA work it did before it filed the complaint in this case, when NSC was an unincorporated nonprofit association.  We therefore need not decide in this appeal which other kinds of organizations might be eligible for FOIA fees.

The Court's 15 August 2012 Order, *Nat'l Sec. Counselors v. CIA*, No. 11-00443 (D.D.C.))). NSC's assertion of identity between attorney and client was made in the materially distinct context of eligibility to receive in discovery information that the government asserted would be exempt from general public disclosure under FOIA. NSC proposed a protective order to keep the information confidential, and noted that, "[w]ith respect to the general rule that it is not good practice to provide information to a party's counsel that cannot be shared with the party itself, such is not the case here, since the undersigned is both NSC's counsel and the Executive Director of NSC, in effect both the counsel *and* the party." J.A. 101 n.1. The asserted functional identity of NSC and its counsel for purposes of maintaining confidentiality does not in any way nullify NSC's status as an independent corporate entity or negate the attorney-client relationship between the corporation and McClanahan, who presumptively provides his client firm with objective and independent legal advice.

Because the government did not challenge NSC's corporate status, the district court should have concluded that NSC was not ineligible for fees under the *pro se* litigant exception. In the absence of grounds in the record on which a reasonable factfinder could conclude that NSC was not a corporation legally distinct from McClanahan, NSC remained eligible for fees, for it did not fall into the "narrow exception" to fee eligibility for *pro se* litigants. *Baker*, 473 F.3d at 324. By holding otherwise, the court effectively disregarded the corporate form without a legal or factual basis for doing so.

We therefore reverse the district court's holding that NSC is ineligible for fees under FOIA, and remand to the district court for further proceedings consistent with this opinion.[7]

*So ordered.*

---

[7] In light of our disposition of NSC's appeal of the initial fee-denial order, we need not reach the government's claim that NSC failed to give sufficient notice of its intent to appeal the order denying reconsideration.