# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 13, 2023

Decided June 21, 2024
Reissued August 16, 2024

No. 23-1044

JOHN DOE,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

On Petition for Review of an Order
of the Securities and Exchange Commission

*Thomas Cummins*, pro hac vice, argued the cause for petitioner. On the briefs was *Max Maccoby*.

*William K. Shirey*, Counsel to the Solicitor, U.S. Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Megan Barbero*, General Counsel, and *Michael A. Conley*, Solicitor.

Before: HENDERSON, WILKINS, and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

2

WILKINS, *Circuit Judge*:    Suspecting his client of committing a crime, an attorney blows the whistle, intending to subject his client to a possible investigation and enforcement action by the Securities and Exchange Commission (the "Commission").    Can such an attorney then collect a whistleblower award from the Commission on the grounds that the disclosure of his client's information was reasonably necessary to serve his client's interests?    We agree with the Commission that the answer to that question is no.

Under the Commission's regulations implementing its whistleblower award program, an attorney may not receive a whistleblower award for disclosing information obtained during the representation of a client unless the attorney's disclosure was permitted by the applicable state bar rules or the Commission's attorney conduct regulations.  *See* 17 C.F.R. § 240.21F-4(b)(4)(ii).  Petitioner John Doe, an attorney, filed a whistleblower tip with the Commission, disclosing information obtained while representing a client.    Doe then filed an application for a whistleblower award.  Doe argued that his tip was permitted by an applicable state bar rule that authorizes the disclosure of "confidential information" to the extent that the attorney "reasonably believes necessary" to "serve the client's interest."    Doe also stated repeatedly before the Commission, however, that he had suspected his client of wrongdoing and had intended for his whistleblower tip to result in his client being investigated by the Commission.

The Commission denied Doe's application, reasoning that Doe's disclosure of his client's information was not permitted by any applicable state bar rule.  We affirm the Commission's sound determination that Doe's disclosure of his client's information was not reasonably necessary to serve his client's

interest because the record shows that, when he filed his tip, Doe suspected his client of wrongdoing and intended to subject his own client to an investigation by the Commission.

## I.

### A.

The Commission's whistleblower award program was created when Congress passed the Dodd-Frank Act, which amended the Securities Exchange Act of 1934 (the "Exchange Act") to create a range of new incentives and protections for whistleblowers. *See* Pub. L. No. 111-203, § 922, 124 Stat. 1376 (2010) (codified at 15 U.S.C. § 78u-6); *see also Doe v. SEC*, 28 F.4th 1306, 1311–12 (D.C. Cir. 2022). The Exchange Act permits the Commission to provide monetary awards to "whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement" of a "covered judicial or administrative action" that resulted "in monetary sanctions exceeding $1,000,000." 15 U.S.C. § 78u-6(a)(1), (b)(1). "[O]riginal information" is information that, as relevant here, is "derived from the independent knowledge or analysis of a whistleblower." *Id.* § 78u-6(a)(3)(A).

In regulations implementing the whistleblower award program, the Commission has limited the circumstances under which an attorney may receive an award for reporting information that was gathered during the attorney's representation of a client. *See id.* § 78u-6(j) (authorizing the Commission to "issue such rules and regulations as may be necessary or appropriate to implement" the whistleblower award program); *see also* 17 C.F.R. § 240.21F-4. Those regulations instruct whistleblowers that the Commission "will not consider information to be derived from [a

whistleblower's] independent knowledge or independent analysis"—that is, not "original information" within the meaning of the Exchange Act, *see* 15 U.S.C. § 78u-6(a)(3)(A)—if the whistleblower

> obtained the information in connection with the legal representation of a client on whose behalf [the whistleblower] . . . [is] providing services, and [the whistleblower] seek[s] to use the information to make a whistleblower submission for [the whistleblower's] own benefit, unless disclosure would otherwise be permitted by [the Commission's attorney conduct regulations], the applicable state attorney conduct rules, or otherwise.

17 C.F.R. § 240.21F-4(b)(4)(ii) ("Exchange Act Rule 21F-4(b)(4)(ii)").

**B.**

In 2018, the Commission brought an enforcement action against two individuals—Individual 1 and Individual 2—and corporate entities owned and controlled by those individuals (collectively, "Defendants"), alleging that they had engaged in securities fraud. The Commission explained that the Defendants had offered and sold the securities of a corporate entity. In doing so, the Defendants had misrepresented to investors in the securities offering that their money would be used to fund a particular project (the "Project"). Instead of spending investors' funds on the Project, however, Individual 1 and Individual 2 misappropriated a large portion of investors' funds for their personal use.

The Commission's preceding investigation was prompted, in part, by a whistleblower tip filed by Petitioner John Doe.[1] As the Defendants' securities fraud scheme was unfolding, Doe was employed as in-house counsel at a company (the "Company"). The Company was owned and controlled by Individual 1 and provided assistance in connection with the Defendants' securities offering. Doe worked on legal and administrative matters that were necessitated by the securities offering.

During the course of his employment at the Company, Doe came across information that indicated that Individual 2 was misappropriating money invested in the securities offering. Individual 2 did not own, control, or play any formal role at the Company.

Doe filed a whistleblower tip with the Commission. In his tip, Doe explained that Individual 2 was misappropriating investors' funds for his personal use and that, as a result, the Project that the securities offering was supposed to fund would never be completed. Doe explained that the Commission could help "protect investors" by ensuring that the Project was completed or, at a minimum, that investors received their money back. J.A. 52.

Although Doe's whistleblower tip did not mention the Company or Individual 1, both were investigated by the Commission as a result of Doe's tip and ultimately subject to enforcement actions. The Commission's investigation and enforcement actions resulted in judgments against Individual 1, Individual 2, the Company, and other corporate entities,

---

[1] In addition to Doe's tip, the Commission also received a referral from another government agency.

along with sanctions collectively totaling tens of millions of dollars.

## C.

Following the conclusion of enforcement proceedings, the Commission published a Notice of Covered Action inviting potential claimants to file an application for a whistleblower award. Doe timely filed an application. In his application, Doe stated that his tip had been intended not only to show Individual 2's "culpability" but also "to launch a wider investigation into the entire project." J.A. 43.

The Commission issued a preliminary determination recommending that Doe's application be denied on the grounds that Doe had not submitted "original information." Citing Exchange Act Rule 21F-4(b)(4)(ii), the Commission explained that because Doe had obtained the information in his tip during his legal representation of his client, the Company, Doe could not receive a whistleblower award unless his disclosure was permitted by the Commission's attorney conduct regulations or by the "applicable state attorney conduct rules." 17 C.F.R. § 240.21F-4(b)(4)(ii). Doe's disclosure, the Commission concluded, was not permitted by the applicable state attorney conduct rules: The Florida Rules of Professional Conduct applied based on the location of the conduct at issue, and no Florida Rule of Professional Conduct authorized Doe's disclosure to the Commission.

Doe timely filed a request for reconsideration, primarily contending that two Florida Rules of Professional Conduct in fact permitted his disclosure. First, Doe pointed to Florida Rule of Professional Conduct 4-1.6(b) ("Florida Rule 4-1.6(b)"), which requires a lawyer to "reveal confidential information to

the extent the lawyer reasonably believes necessary to . . . prevent a client from committing a crime." Fla. R. Prof'l Conduct 4-1.6(b)(1). Doe explained that he had had "concerns" about the conduct of his client—the Company—and that his whistleblower tip was intended, in part, "to prevent [his] client, [the Company,] from committing a crime." J.A. 76–77, 80. Second, Doe pointed to Florida Rule of Professional Conduct 4-1.6(c)(1) ("Florida Rule 4-1.6(c)(1)"), which provides that a lawyer "may reveal confidential information to the extent the lawyer reasonably believes necessary to . . . serve the client's interest unless it is information the client specifically requires not to be disclosed." Fla. R. Prof'l Conduct 4-1.6(c)(1). Doe explained that he believed his disclosure would serve his client's interest by "preventing further misappropriation by [Individual 2], possibly recovering funds that had been misappropriated, and helping lead to the successful completion of [the Project]." J.A. 81. In a sworn declaration, Doe reiterated that the purpose of his whistleblower tip "was to prevent a crime being committed by . . . [his] client," and to prompt the Commission to investigate the entire securities offering, including the Company. J.A. 84.

In a 2023 order, the Commission formally denied Doe's whistleblower award application, again concluding that Doe had not provided "original information" under Exchange Act Rule 21F-4(b)(4)(ii) because no authority authorized Doe's disclosure of his client's information. As to Florida Rule 4-1.6(b), the Commission reasoned that the record demonstrated that Doe had had, at most, "suspicion or speculation" that the Company was implicated in criminal activity, not that Doe believed that his disclosure was necessary to prevent the Company from committing a crime. J.A. 96. The Commission also rejected Doe's argument that his disclosure was permitted

by Florida Rule 4-1.6(c)(1). The Commission acknowledged Doe's contention that his disclosure could prevent further misappropriation by Individual 2, lead to the Project being completed, or lead to misappropriated funds being returned to investors. But, the Commission explained, those possible benefits were the interests of "investors" in the securities offering, not "the interests of [Doe's] client." J.A. 97. And in any event, the Commission emphasized, Doe "does not demonstrate how exposing [his] client to an SEC investigation and/or enforcement action based on suspicions would be in [his] client's interest." *Id.*

## II.

Doe petitions for review of the Commission's denial of his whistleblower award application. We have jurisdiction over Doe's petition under 15 U.S.C. § 78u-6(f).

Determinations regarding whether to make a whistleblower award "shall be in the discretion of the Commission." *Id.* We review the Commission's determination "in accordance with section 706" of the Administrative Procedure Act. *Id.* Thus, we will set aside the Commission's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *see also* 15 U.S.C. § 78y(a)(4) ("The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.").

Doe contends that the Commission's decision to deny his application under Exchange Act Rule 21F-4(b)(4)(ii) was arbitrary, capricious, and contrary to the evidence before the agency. As we have explained, under the Commission's regulations, an attorney may not receive a whistleblower award

from the Commission unless his disclosure was authorized by the "applicable state attorney conduct rules." 17 C.F.R. § 240.21F-4(b)(4)(ii). Doe maintains that his disclosure to the Commission of information obtained during his representation of his client, the Company, was authorized by Florida Rule 4-1.6(c)(1). That rule, as mentioned, states that a lawyer "may reveal confidential information to the extent the lawyer reasonably believes necessary" to "serve the client's interest." Fla. R. Prof'l Conduct 4-1.6(c)(1). Doe argues that the Commission's decision that Doe's disclosure was not reasonably necessary to serve his client's interests misconstrues the evidence in the record.[2]

We disagree. We hold that substantial evidence supports the Commission's finding that Doe did not reasonably believe that disclosing the Company's information to the Commission was "necessary" to "serve [his] client's interest." *Id.* The record demonstrates that at the time he filed the tip, Doe believed that the Company was implicated in the securities fraud scheme. In reporting on the suspected wrongdoing, then, Doe was reporting on his own client. Common sense therefore dictates that Doe could not have reasonably believed that he was acting in his client's best interest. Indeed, Doe's own statements illustrate as much. Doe noted in his application for reconsideration, for example, that while he did not yet have "smoking gun" proof of misconduct by his client at the time that he filed his whistleblower tip, he had "suspicions" that his

---

[2] Doe and the Commission agree on appeal that the Florida Rules of Professional Conduct apply based on the location of the conduct at issue. The parties also agree that because Doe was acting as in-house counsel for the Company, Doe's client was the Company itself. *Cf. Nat'l Sec. Couns. v. CIA*, 811 F.3d 22, 33 (D.C. Cir. 2016) ("[T]here is an attorney-client relationship between in-house counsel and a corporation.").

client was implicated in the securities fraud scheme. J.A. 78. And in a sworn declaration, Doe stated, "[t]he purpose of the disclosure in my whistleblower submission was to prevent a crime being committed by . . . my client." J.A. 84. Doe elaborated that his tip was intended to enable the Commission to investigate the "entire money trail," including not only Individual 2 but also Doe's own client. J.A. 85.

Doe's arguments to the contrary are unavailing. Perhaps sensing that he would face an uphill battle in arguing that intentionally subjecting one's client to an investigation is in that client's best interest, Doe primarily challenges the Commission's finding that Doe suspected that his client was involved in wrongdoing when he submitted his whistleblower tip. Doe emphasizes that the preamble to the Florida Rules of Professional Conduct provides that an "assessment of a lawyer's conduct will be made on the basis of the *facts and circumstances as they existed at the time of the conduct in question* in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation." Fla. R. of Prof'l Conduct pmbl. (emphasis added). In Doe's view, to evaluate the "facts and circumstances as they existed at the time" that he filed his whistleblower tip, the Commission should have considered only the contemporaneous evidence—the content of Doe's tip—not any of Doe's subsequent statements before the agency. Those subsequent statements to the Commission, Doe explains, were made with the benefit of "hindsight"; they merely reflect how Doe's mindset changed as the Commission's investigation revealed that his employer was implicated in wrongdoing. Pet. Br. 26. Accordingly, Doe contends, the statements should be ignored as irrelevant. Doe argues that his tip, read in isolation, supports the notion that he thought that his client was a victim—not a perpetrator—of a crime. Doe accordingly reasonably believed that his tip was in

his client's best interest because he thought the tip could protect his client from others' wrongdoing.

Doe's argument fails on its own terms. As he recognizes, the preamble to the Florida Rules suggests that Doe's conduct should be assessed based on the facts and circumstances at the time Doe submitted his tip. *See* Fla. R. of Prof'l Conduct pmbl. And here, Doe submitted material to the Commission, including a sworn declaration, that spoke directly to those facts—namely, what Doe believed at the time he submitted his tip. Doe informed the Commission, for example, that his "goal" in submitting this tip was "to prevent [his] client . . . from committing a crime." J.A. 76–77. Doe elaborated that he intended for the Commission to investigate the entire securities offering, including his client; he explained, "I fully expected my tip to result in such a widely encompassing investigation" and "I intended for that to occur." J.A. 77. Doe provides this Court no reason to think that the Commission was required to ignore that evidence of his then-existing mental state. Further, Doe's counsel stated at oral argument that he had no precedent to support his contention that the Commission could consider only the content of his whistleblower tip when assessing his application. Oral Arg. Tr. at 28. The Commission acted reasonably when it considered Doe's own statements in arriving at the conclusion that Doe suspected his client was a perpetrator of the wrongdoing he suspected was occurring.

Next, Doe contends that the Commission erred in rejecting Doe's argument that he believed that his whistleblower tip would serve his client's interest by "preventing further misappropriation by [Individual 2], possibly recovering funds that had been misappropriated, and helping lead to the successful completion of [the Project]." J.A. 81. We think this argument is effectively resolved by our conclusion that

substantial evidence supports the notion that Doe suspected that the Company was engaged in wrongdoing when he submitted his tip. Doe may be correct that preventing the misappropriation of funds or enabling the Project to be completed could have benefitted the Company, but whether the disclosure could conceivably benefit the Company is not the correct question. Florida Rule 4-1.6(c)(1) asks not whether a disclosure could benefit the client in *some way*, but rather whether the lawyer "reasonably believes" that a disclosure is "*necessary*" to serve the client's interest. Here, with the possible marginal benefits to which Doe points on one side of the ledger, and the foreseeable investigation and enforcement action by the Commission on the other, we do not think Doe could reasonably have believed that disclosing the information to the Commission was "necessary" to serve his client's interests.

Finally, we note that in a footnote in his opening brief, Doe stated that he had argued before the Commission that his disclosure was authorized by several other state attorney conduct rules and the Commission's attorney conduct regulations; Doe informed this Court that those arguments were "incorporated by reference as if set forth fully herein." Pet. Br. 13 n.2. This Court, however, does not "consider cursory arguments made only in a footnote." *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999); *see also Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 546 (D.C. Cir. 2006) (attempting to "incorporate by reference" other arguments is "insufficient to raise the issue"). Thus, this Court need not address Doe's alternative argument—articulated both in his reply brief and at oral argument—that his disclosure was authorized by Florida Rule 4-1.6(b), which requires disclosure where reasonably necessary to prevent a lawyer's client from committing a crime.

At bottom, having repeatedly stated to the Commission that he believed at the time he submitted his tip that his client was implicated in wrongdoing, Doe cannot now unring the bell. We hold that the Commission's determination—based on Doe's own statements—that Doe could not reasonably have believed that his disclosure was necessary to serve his client's interests was supported by substantial evidence and was not arbitrary or capricious.

For these reasons, Doe's petition for review is denied.

*So ordered.*